(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HOLDER, ATTORNEY GENERAL *v.* MARTINEZ GUTIERREZ

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1542.   Argued January 18, 2012—Decided May 21, 2012*

Title 8 U. S. C. §1229b(a) authorizes the Attorney General to cancel the removal of an alien from the United States who, among other things, has held the status of a lawful permanent resident (LPR) for at least five years, §1229b(a)(1), and has lived in the United States for at least seven continuous years after a lawful admission, §1229b(a)(2). These cases concern whether the Board of Immigration Appeals (BIA or Board) should impute a parent's years of continuous residence or LPR status to his or her child. That issue arises because a child may enter the country lawfully, or may gain LPR status, after one of his parents does—meaning that a parent may satisfy §1229b(a)(1) or §1229b(a)(2), while his child, considered independently, does not. In *In re Escobar*, 24 I. & N. Dec. 231, the BIA concluded that an alien must meet §1229b(a)'s requirements on his own. But the Ninth Circuit found the Board's position unreasonable, holding that §1229b(a)(1) and §1229b(a)(2) require imputation. See *Mercado-Zazueta* v. *Holder*, 580 F. 3d 1102; *Cuevas-Gaspar* v. *Gonzales*, 430 F. 3d 1013.

Respondent Martinez Gutierrez illegally entered the country with his family in 1989, when he was 5 years old. Martinez Gutierrez's father was lawfully admitted to the country two years later as an LPR. But Martinez Gutierrez was neither lawfully admitted nor given LPR status until 2003. Two years after that, he was apprehended for smuggling undocumented aliens across the border. Admitting the offense, he sought cancellation of removal. The Immigration Judge

———————

*Together with No. 10–1543, *Holder, Attorney General* v. *Sawyers,* also on certiorari to the same court.

concluded that Martinez Gutierrez qualified for relief because of his father's immigration history, even though Martinez Gutierrez could not satisfy §1229b(a)(1) or §1229b(a)(2) on his own. Relying on *Escobar*, the BIA reversed. The Ninth Circuit then granted Martinez Gutierrez's petition for review and remanded the case to the Board for reconsideration in light of its contrary decisions.

Respondent Sawyers was lawfully admitted as an LPR in October 1995, when he was 15 years old. At that time, his mother had already resided in the country for six consecutive years following a lawful entry. After Sawyers was convicted of a drug offense in August 2002, the Government began removal proceedings. The Immigration Judge found Sawyers ineligible for cancellation of removal because he could not satisfy §1229b(a)(2). The BIA affirmed, and Sawyers petitioned the Ninth Circuit for review. There, he argued that the Board should have counted his mother's years of residency while he was a minor toward §1229b(a)(2)'s 7-year continuous-residency requirement. The Court of Appeals granted the petition and remanded the case to the BIA.

*Held:* The BIA's rejection of imputation is based on a permissible construction of §1229b(a). Pp. 6–13.

(a) The Board has required each alien seeking cancellation of removal to satisfy §1229b(a)'s requirements on his own, without relying on a parent's years of continuous residence or immigration status. That position prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best. See *e.g., Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–844, and n. 11. The BIA's approach satisfies this standard.

The Board's position is consistent with the statute's text. Section 1229b(a) does not mention—much less require—imputation. Instead, it simply calls for "the alien" to meet the prerequisites for cancellation of removal. See §§1101(a)(13)(A) and (a)(33). Respondents contend that this language does not foreclose imputation, but even if so, that is not enough to require the Board to adopt that policy. Pp. 6–7.

(b) Neither does the statute's history and context mandate imputation. Section 1229b(a) replaced former §212(c) of the Immigration and Nationality Act (INA), which allowed the Attorney General to prevent the removal of an alien with LPR status who had maintained a "lawful unrelinquished domicile of seven consecutive years" in this country. Like §1229b(a), §212(c) was silent on imputation. But every Court of Appeals that confronted the question concluded that, in determining eligibility for §212(c) relief, the Board should impute a parent's years of domicile to his or her child. Based on this history, Sawyers contends that Congress would have understood §1229b(a)'s

language to provide for imputation. But in enacting §1229b(a), Congress eliminated the very term—"domicile"—on which the appeals courts had founded their imputation decisions. And the doctrine of congressional ratification applies only when Congress reenacts a statute without relevant change. See *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 349.

Nor do the INA's purposes demand imputation. As respondents correctly observe, many provisions of immigration law advance the goals of promoting family unity and providing relief to aliens with strong ties to this country. But these are not the INA's only goals, and Congress did not pursue them at all costs. For example, aliens convicted of aggravated felonies are ineligible for cancellation of removal, regardless of the strength of their family ties, see §1229b(a)(3). In addition, as these cases show, not every alien with LPR status can immediately get the same for a spouse or minor child. A silent statute cannot be read as requiring imputation just because that rule would be family-friendly. Pp. 7–10.

(c) Respondents advance two additional arguments for why the Board's position is not entitled to *Chevron* deference. First, they claim that the Board's approach to §1229b(a) is arbitrary because it is inconsistent with the Board's acceptance of imputation under other, similar provisions that are silent on the matter. See §1182(k) and §1181(b). But the Board's decision in *Escobar* provided a reasoned explanation for these divergent results: The Board imputes matters involving an alien's state of mind, while declining to impute objective conditions or characteristics. See 24 I. & N. Dec., at 233–234, and n. 4. Section 1229b(a) hinges on the objective facts of immigration status and place of residence. See *id.,* at 233. So the Board's approach to §1229b(a) largely follows from one straightforward distinction.

Second, respondents claim that the BIA adopted its no-imputation rule only because it thought Congress had left it no other choice. But *Escobar* belies this contention. The Board did explain how §1229b(a)'s text supports its no-imputation policy. But the Board also brought its experience and expertise to bear on the matter: It noted that there was no precedent in its decisions for imputing status or residence, and it argued that allowing imputation under §1229b(a) would create anomalies in the statutory scheme. *Escobar* thus expressed the BIA's view that statutory text, administrative practice, and regulatory policy all pointed toward disallowing imputation. In making that case, the opinion reads like a multitude of agency interpretations to which this and other courts have routinely deferred. Pp. 10–13.

No. 10–1542, 411 Fed. Appx. 121; No. 10–1543, 399 Fed. Appx. 313,

reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

Nos. 10–1542 and 10–1543

————

ERIC H. HOLDER, JR., ATTORNEY GENERAL,
PETITIONER
10–1542                       *v.*
CARLOS MARTINEZ GUTIERREZ


ERIC H. HOLDER, JR., ATTORNEY GENERAL,
PETITIONER
10–1543                       *v.*
DAMIEN ANTONIO SAWYERS

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 21, 2012]

JUSTICE KAGAN delivered the opinion of the Court.

An immigration statute, 8 U. S. C. §1229b(a), authorizes the Attorney General to cancel the removal of an alien from the United States so long as the alien satisfies certain criteria. One of those criteria relates to the length of time an alien has lawfully resided in the United States, and another to the length of time he has held permanent resident status here. We consider whether the Board of Immigration Appeals (BIA or Board) could reasonably conclude that an alien living in this country as a child must meet those requirements on his own, without counting a parent's years of residence or immigration status. We hold that the BIA's approach is based on a permissible construction of the statute.

# I
## A

The immigration laws have long given the Attorney General discretion to permit certain otherwise-removable aliens to remain in the United States.  See *Judulang* v. *Holder*, 565 U. S. ___, ___ (2011) (slip op., at 2–4).  The Attorney General formerly exercised this authority by virtue of §212(c) of the Immigration and Nationality Act (INA), 66 Stat. 187, 8 U. S. C. §1182(c) (1994 ed.), a provision with some lingering relevance here, see *infra*, at 7–9.  But in 1996, Congress replaced §212(c) with §1229b(a) (2006 ed.).  That new section, applicable to the cases before us, provides as follows:

> "**(a) Cancellation of removal for certain permanent residents**

> "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

>> "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

>> "(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

>> "(3) has not been convicted of any aggravated felony." *Ibid.*

Section 1229b(a) thus specifies the criteria that make an alien eligible to obtain relief from the Attorney General. The first paragraph requires that the alien have held the status of a lawful permanent resident (LPR) for at least five years.  And the second adds that the alien must have lived in the United States for at least seven continuous years after a lawful admission, whether as an LPR or in

some other immigration status.[1]  (The third paragraph is not at issue in these cases.)

The question we consider here is whether, in applying this statutory provision, the BIA should impute a parent's years of continuous residence or LPR status to his or her child.  That question arises because a child may enter the country lawfully, or may gain LPR status, *after* one of his parents does.  A parent may therefore satisfy the requirements of §§1229b(a)(1) and (2), while his or her child, considered independently, does not.  In these circumstances, is the child eligible for cancellation of removal?

The Ninth Circuit, the first court of appeals to confront this issue, held that such an alien could obtain relief.  See *Cuevas-Gaspar* v. *Gonzales*, 430 F. 3d 1013 (2005).  Enrique Cuevas-Gaspar and his parents came to the United States illegally in 1985, when he was one year old.  Cuevas-Gaspar's mother was lawfully admitted to the country in 1990, as an LPR.  But Cuevas-Gaspar was lawfully admitted only in 1997, when he too received LPR status.  That meant that when Cuevas-Gaspar committed a removable offense in 2002, he could not independently satisfy §1229b(a)(2)'s requirement of seven consecutive years of residence after a lawful entry.[2]  (The parties agreed that he just met §1229b(a)(1)'s 5-year status requirement.)  The Board deemed Cuevas-Gaspar ineligible for relief on that account, but the Ninth Circuit found that position unrea-

——————

[1] The INA defines "admitted" as referring to "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U. S. C. §1101 (a)(13)(A).  The 7-year clock of §1229b(a)(2) thus begins with an alien's *lawful* entry.

[2] The 7-year clock stopped running on the date of Cuevas-Gaspar's offense under a statutory provision known as the "stop-time" rule.  See §1229b(d)(1) ("For purposes of this section, any period of continuous residence . . . in the United States shall be deemed to end . . . when the alien is served a notice to appear . . . or . . . when the alien has committed an offense . . . that renders the alien . . . removable from the United States . . . , whichever is earliest").

sonable. According to the Court of Appeals, the Board should have "imputed" to Cuevas-Gaspar his mother's years of continuous residence during the time he lived with her as an "unemancipated minor." *Id.,* at 1029. That approach, the Ninth Circuit reasoned, followed from both the INA's "priorit[ization]" of familial relations and the Board's "consistent willingness" to make imputations from a parent to a child in many areas of immigration law. *Id.,* at 1026.

The Board responded by reiterating its opposition to imputation under both relevant paragraphs of §1229b(a). In *In re Escobar*, 24 I. & N. Dec. 231 (2007), the Board considered whether a child could rely on a parent's period of LPR status to satisfy §1229b(a)(1)'s 5-year clock. The Board expressly "disagree[d] with the reasoning" of *Cuevas-Gaspar*, rejecting the Ninth Circuit's understanding of both the statute and the Board's prior policies. 24 I. & N. Dec., at 233–234, and n. 4. Accordingly, the Board announced that it would "decline to extend" *Cuevas-Gaspar* to any case involving §1229b(a)(1), and that it would ignore the decision even as to §1229b(a)(2) outside the Ninth Circuit. 24 I. & N. Dec., at 235. A year later, in *Matter of Ramirez-Vargas*, 24 I. & N. Dec. 599 (2008), the BIA took the final step: It rejected imputation under §1229b(a)(2) in a case arising in the Ninth Circuit, maintaining that the court should abandon *Cuevas-Gaspar* and defer to the Board's intervening reasoned decision in *Escobar*. See *Ramirez-Vargas*, 24 I. & N. Dec., at 600–601 (citing *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967 (2005)).

The BIA's position on imputation touched off a split in the courts of appeals. The Third and Fifth Circuits both deferred to the BIA's approach as a reasonable construction of §1229b(a). See *Augustin* v. *Attorney Gen.*, 520 F. 3d 264 (CA3 2008); *Deus* v. *Holder*, 591 F. 3d 807 (CA5 2009). But in *Mercado-Zazueta* v. *Holder*, 580 F. 3d 1102 (2009),

the Ninth Circuit doubled down on its contrary view, declaring the BIA's position unreasonable and requiring imputation under both §§1229b(a)(1) and (a)(2). See *id.,* at 1103 ("[T]he rationale and holding of *Cuevas-Gaspar* apply equally to the five-year permanent residence and the seven-year continuance residence requirements" of §1229b(a)).

B

Two cases are before us. In 1989, at the age of five, respondent Carlos Martinez Gutierrez illegally entered the United States with his family. Martinez Gutierrez's father was lawfully admitted to the country two years later as an LPR. But Martinez Gutierrez himself was neither lawfully admitted nor given LPR status until 2003. Two years after that, Martinez Gutierrez was apprehended for smuggling undocumented aliens across the border. He admitted the offense, and sought cancellation of removal. The Immigration Judge concluded that Martinez Gutierrez qualified for relief because of his father's immigration history, even though Martinez Gutierrez could not satisfy either §1229b(a)(1) or §1229b(a)(2) on his own. See App. to Pet. for Cert. in No. 10–1542, pp. 20a–22a (citing *Cuevas-Gaspar*, 430 F. 3d 1013). The BIA reversed, and after entry of a removal order on remand, reaffirmed its disposition in an order relying on *Escobar*, see App. to Pet. for Cert. in No. 10–1542, at 5a–6a. The Ninth Circuit then granted Martinez Gutierrez's petition for review and remanded the case to the Board for reconsideration in light of the court's contrary decisions. See 411 Fed. Appx. 121 (2011).

Respondent Damien Sawyers was lawfully admitted as an LPR in October 1995, when he was 15 years old. At that time, his mother had already resided in the country for six consecutive years following a lawful entry. After Sawyers's conviction of a drug offense in August 2002, the

Government initiated removal proceedings. The Immigration Judge found Sawyers ineligible for cancellation of removal because he was a few months shy of the seven years of continuous residence required under §1229b(a)(2). See App. to Pet. for Cert. in No. 10–1543, p. 13a. (No one doubted that Sawyers had by that time held LPR status for five years, as required under §1229b(a)(1).) The Board affirmed, relying on its reasoning in *Escobar*. See *In re Sawyers*, No. A44 852 478, 2007 WL 4711443 (Dec. 26, 2007). Sawyers petitioned the Ninth Circuit for review, arguing that the Board should have counted his mother's years of residency while he was a minor toward §1229b(a)(2)'s 7-year requirement. As in *Gutierrez*, the Court of Appeals granted the petition and remanded the case to the BIA. See 399 Fed. Appx. 313 (2010).

We granted the Government's petitions for certiorari, 564 U. S. ___ (2011), consolidated the cases, and now reverse the Ninth Circuit's judgments.

## II

The Board has required each alien seeking cancellation of removal to satisfy §1229b(a)'s requirements on his own, without counting a parent's years of continuous residence or LPR status. That position prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–844, and n. 11 (1984); see also *INS* v. *Aguirre-Aguirre*, 526 U. S. 415, 424–425 (1999) (according *Chevron* deference to the Board's interpretations of the INA). We think the BIA's view on imputation meets that standard, and so need not decide if the statute permits any other construction.

The Board's approach is consistent with the statute's text, as even respondents tacitly concede. Section 1229b(a) does not mention imputation, much less require

it. The provision calls for "the alien"—not, say, "the alien or one of his parents"—to meet the three prerequisites for cancellation of removal. Similarly, several of §1229b(a)'s other terms have statutory definitions referring to only a single individual. See, *e.g.,* §1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to *an alien*, the lawful entry of *the alien* into the United States" (emphasis added)); §1101(a)(33) ("The term 'residence' means the place of general abode; the place of general abode of a person means *his* principal, actual dwelling" (emphasis added)). Respondents contend that none of this language "forecloses" imputation: They argue that if the Board allowed imputation, "[t]he alien" seeking cancellation would "still have to satisfy the provision's durational requirements"—just pursuant to a different computational rule. Brief for Respondent Martinez Gutierrez in No. 10–1542, p. 16 (hereinafter Martinez Gutierrez Brief); see Brief for Respondent Sawyers in No. 10–1543, pp. 11, 15 (hereinafter Sawyers Brief). And they claim that the Board's history of permitting imputation under similarly "silent" statutes supports this construction. Martinez Gutierrez Brief 16; see Sawyers Brief 15–16; *infra*, at 10–11. But even if so—even if the Board *could* adopt an imputation rule consistent with the statute's text—that would not avail respondents. Taken alone, the language of §1229b(a) at least permits the Board to go the other way— to say that "the alien" must meet the statutory conditions independently, without relying on a parent's history.

For this reason, respondents focus on §1229b(a)'s history and context—particularly, the provision's relationship to the INA's former §212(c) and its associated imputation rule. Section 212(c)—§1229b(a)'s predecessor—generally allowed the Attorney General to prevent the removal of an alien with LPR status who had maintained a "lawful unrelinquished domicile of seven consecutive years" in this country. 8 U. S. C. §1182(c) (1994 ed.). Like §1229b(a),

§212(c) was silent on imputation. Yet the Second, Third, and Ninth Circuits (the only appellate courts to consider the question) concluded that, in determining eligibility for relief under §212(c), the Board should impute a parent's years of domicile to his or her child. See *Rosario* v. *INS*, 962 F. 2d 220 (CA2 1992); *Lepe-Guitron* v. *INS*, 16 F. 3d 1021, 1024–1026 (CA9 1994); *Morel* v. *INS*, 90 F. 3d 833, 840–842 (CA3 1996). Those courts reasoned that at common law, a minor's domicile was "the same as that of its parents, since most children are presumed not legally capable of forming the requisite intent to establish their own domicile." *Rosario,* 962 F. 2d, at 224; see *Mississippi Band of Choctaw Indians* v. *Holyfield*, 490 U. S. 30, 48 (1989) (defining "domicile" as "physical presence in a place in connection with a certain state of mind concerning one's intent to remain there"). So by the time Congress replaced §212(c) with §1229b(a), the BIA often imputed a parent's years of domicile to a child in determining eligibility for cancellation of removal. Sawyers argues that against this backdrop, Congress "would have understood the language it chose [in §1229b(a)] to provide for imputation." Sawyers Brief 10.

But we cannot conclude that Congress ratified an imputation requirement when it passed §1229b(a). As all parties agree, Congress enacted §§1229b(a)(1) and (a)(2) to resolve an unrelated question about §212(c)'s meaning. See *id.*, at 17; Martinez Gutierrez Brief 28; Brief for Petitioner 25. Courts had differed on whether an alien's "seven consecutive years" of domicile under §212(c) all had to post-date the alien's obtaining LPR status. See *Cuevas-Gaspar*, 430 F. 3d, at 1027–1028 (canvassing split). Congress addressed that split by creating two distinct durational conditions: the 5-year status requirement of subsection (a)(1), which runs from the time an alien becomes an LPR, and the 7-year continuous-residency requirement of subsection (a)(2), which can include years preceding the

acquisition of LPR status. In doing so, Congress eliminated the very term—"domicile"—on which the appeals courts had founded their imputation decisions. See *supra,* at 8. That alteration dooms respondents' position, because the doctrine of congressional ratification applies only when Congress reenacts a statute without relevant change. See *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 349 (2005).[3] So the statutory history here provides no basis for holding that the BIA flouted a congressional command in adopting its no-imputation policy.

Nor do the INA's purposes demand imputation here, as both respondents claim. According to Martinez Gutierrez, the BIA's approach contradicts that statute's objectives of "providing relief to aliens with strong ties to the United States" and "promoting family unity." Martinez Gutierrez Brief 40, 44; see Sawyers Brief 37. We agree—indeed, we have stated—that the goals respondents identify underlie or inform many provisions of immigration law. See *Fiallo* v. *Bell*, 430 U. S. 787, 795, n. 6 (1977); *INS* v. *Errico*, 385 U. S. 214, 220 (1966). But they are not the INA's only goals, and Congress did not pursue them to the *n*th degree. To take one example, §1229b(a)'s third paragraph makes aliens convicted of aggravated felonies ineligible for

_____

[3] Sawyers contends that §1229b(a)(2)'s replacement term—"resided continuously"—is a "term of art" in the immigration context which incorporates "an intent component" and so means the same thing as "domiciled." Sawyers Brief 25–26 (emphasis deleted). Thus, Sawyers argues, we should read §1229b(a) as reenacting §212(c) without meaningful change. See *id.,* at 25. But even assuming that Congress could ratify judicial decisions based on the term "domicile" through a new statute using a synonym for that term, we do not think "resided continuously" qualifies. The INA defines "residence" as a person's "principal, actual dwelling place in fact, *without regard to intent*," 8 U. S. C. §1101(a)(33) (emphasis added), and we find nothing to suggest that Congress added an intent element, inconsistent with that definition, by requiring that the residence have been maintained "continuously for 7 years."

cancellation of removal, regardless of the strength of their family ties. See §1229b(a)(3). And more generally—as these very cases show—not every alien who obtains LPR status can immediately get the same for her spouse or minor children. See Brief for Petitioner 31–32, and n. 9 (providing program-specific examples). We cannot read a silent statute as requiring (not merely allowing) imputation just because that rule would be family-friendly.

Respondents' stronger arguments take a different tack—that we should refuse to defer to the Board's decision even assuming Congress placed the question of imputation in its hands. Respondents offer two main reasons. First, they contend that the Board's approach to §1229b(a) cannot be squared with its acceptance of imputation under other, similar statutory provisions. This "wil[d]" and "'[u]nexplained inconsistency,'" Sawyers asserts, is the very "paradigm of arbitrary agency action." Sawyers Brief 13, 41 (emphasis deleted); see Martinez Gutierrez Brief 52–54. Second, they argue that the Board did not appreciate its own discretion over whether to allow imputation. The Board, they say, thought Congress had forbidden imputation, and so did not bring its "'experience and expertise to bear'" on the issue. *Id.,* at 31 (quoting *PDK Labs. Inc.* v. *DEA*, 362 F. 3d 786, 797 (CADC 2004)); see Sawyers Brief 38–39. These arguments are not insubstantial, but in the end neither persuades us to deny the Board the usual deference we accord to agency interpretations.

Start with the claim of inconsistency. The BIA has indeed imputed parental attributes to children under other INA provisions that do not mention the matter. Section 1182(k), for example, enables the Attorney General to let certain inadmissible aliens into the country if he finds "that inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by, the immigrant before the time of departure." Like §1229b(a), that provision refers to a single person

("the immigrant") and says nothing about imputation. But the BIA has consistently imputed a parent's knowledge of inadmissibility (or lack thereof) to a child. See, *e.g., Senica* v. *INS*, 16 F. 3d 1013, 1015 (CA9 1994) ("Therefore, the BIA reasoned, the children were not entitled to relief under [§1182(k)] because [their mother's] knowledge was imputed to them"); *In re Mushtaq*, No. A43 968 082, 2007 WL 4707539 (BIA, Dec. 10, 2007) (*per curiam*); *In re Ahmed*, No. A41 982 631, 2006 WL 448156 (BIA, Jan. 17, 2006) (*per curiam*).

Similarly, the Board imputes a parent's abandonment (or non-abandonment) of LPR status to her child when determining whether that child can reenter the country as a "returning resident immigran[t]" under §1181(b). See *Matter of Zamora*, 17 I. & N. Dec. 395, 396 (1980) (holding that a "voluntary and intended abandonment by the mother is imputed" to an unemancipated minor child for purposes of applying §1181(b)); *Matter of Huang*, 19 I. & N. Dec. 749, 755–756 (1988) (concluding that a mother and her children abandoned their LPR status based solely on the mother's intent); *In re Ali*, No. A44 143 723, 2006 WL 3088820 (BIA, Sept. 11, 2006) (holding that a child could not have abandoned his LPR status if his mother had not abandoned hers). And once again, that is so even though neither §1181(b) nor any other statutory provision says that the BIA should look to the parent in assessing the child's eligibility for reentry.

But *Escobar* provided a reasoned explanation for these divergent results: The Board imputes matters involving an alien's state of mind, while declining to impute objective conditions or characteristics. See 24 I. & N. Dec., at 233–234, and n. 4. On one side of the line, knowledge of inadmissibility is all and only about a mental state. See, *e.g., Senica*, 16 F. 3d, at 1015; *In re Ahmed*, 2006 WL 448156. Likewise, abandonment of status turns on an alien's "intention of . . . returning to the United States" to live as a

permanent resident, *Zamora*, 17 I. & N. Dec., at 396; the Board thus explained that imputing abandonment is "consistent with the . . . longstanding policy that a child cannot form the intent necessary to establish his or her own domicile," *Escobar*, 24 I. & N. Dec., at 234, n. 4. And as that analogy recalls, the 7-year domicile requirement of the former §212(c) also involved intent and so lent itself to imputation. See *Rosario,* 962 F. 2d, at 224; *supra,* at 8. But the 5- and 7-year clocks of §1229b(a) fall on the other side of the line, because they hinge not on any state of mind but on the objective facts of immigration status and place of residence. See *Escobar*, 24 I. & N. Dec., at 233 ("[W]e find that residence is different from domicile because it 'contains no element of subjective intent'" (quoting *Cuevas-Gaspar*, 430 F. 3d, at 1031 (Fernandez, J., dissenting))). The BIA's varied rulings on imputation thus largely follow from one straightforward distinction.[4]

Similarly, *Escobar* belies respondents' claim that the BIA adopted its no-imputation rule only because it thought Congress had left it no other choice. The Board, to be sure, did not highlight the statute's gaps or ambiguity; rather, it read §1229b(a)'s text to support its conclusion that each alien must personally meet that section's dura-

––––––––––––

[4] Respondents aver that the BIA deviates from this principle in imputing to a child his parent's "'firm resettlement'" in another country, which renders an alien ineligible for asylum without regard to intent. See Sawyers Brief 39; Martinez Gutierrez Brief 52. But the Government denies that it has a "settled imputation rule" in that context. Reply Brief for Petitioner 13. And the sources on which respondents rely are slender reeds: a 40-year old ruling by a regional commissioner (not the Board itself) that considered the conduct of both the parents and the child, see *Matter of Ng*, 12 I. & N. Dec. 411 (1967), and a Ninth Circuit decision imputing a parent's resettlement even though the Board had focused only on the child's actions, see *Vang* v. *INS*, 146 F. 3d 1114, 1117 (1998). Based on these scant decisions, we cannot conclude that the Board has any policy on imputing resettlement, let alone one inconsistent with *Escobar*.

tional requirements. See 24 I. & N. Dec., at 235. But the Board also explained that "there [was] no precedent" in its decisions for imputing status or residence, and distinguished those statutory terms, on the ground just explained, from domicile or abandonment of LPR status. *Id.,* at 234; see *id.,* at 233–234, and n. 4. And the Board argued that allowing imputation under §1229b(a) would create anomalies in administration of the statutory scheme by permitting even those who had not obtained LPR status—or could not do so because of a criminal history—to become eligible for cancellation of removal. See *id.,* at 234–235, and n. 5. The Board therefore saw neither a "logical" nor a "legal" basis for adopting a policy of imputation. *Id.,* at 233. We see nothing in this decision to suggest that the Board thought its hands tied, or that it might have reached a different result if assured it could do so. To the contrary, the decision expressed the BIA's view, based on its experience implementing the INA, that statutory text, administrative practice, and regulatory policy all pointed in one direction: toward disallowing imputation. In making that case, the decision reads like a multitude of agency interpretations—not the best example, but far from the worst—to which we and other courts have routinely deferred. We see no reason not to do so here.

Because the Board's rejection of imputation under §1229b(a) is "based on a permissible construction of the statute," *Chevron*, 467 U. S., at 843, we reverse the Ninth Circuit's judgments and remand the cases for further proceedings consistent with this opinion.

*It is so ordered.*