FILED
United States Court of Appeals
Tenth Circuit

August 14, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ERNESTO CELAYA-MARTINEZ,
a/k/a Ancelmo Ernesto Martinez,

Petitioner,

v.

ERIC. H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 11-9573
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

Ernesto Celaya-Martinez, a native and citizen of El Salvador, petitions for

review of the Board of Immigration Appeals' (BIA) order dismissing his appeal from

an immigration judge's (IJ) decision denying his application for temporary protected

status. Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we deny the petition for

review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

The facts of this case are not in dispute. Petitioner illegally entered the United States in January 2006. His mother entered the United States in 2000. Petitioner was apprehended within weeks of his entry and conceded removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been inspected or paroled. In August 2006, November 2007, and December 2008, Petitioner thrice sought protection from removal as a national of El Salvador by applying for temporary protected status (TPS) pursuant to 8 U.S.C. § 1254a. He was denied each time for failure to meet the TPS eligibility requirements.

As explained further below, to be eligible for TPS, Petitioner needed to show that he had resided continuously and was continuously physically present in the United States since 2001. But Petitioner first entered the United States in January 2006, almost five years too late to satisfy TPS eligibility. On this basis, the United States Citizenship and Immigration Services (USCIS) denied each of Petitioner's TPS applications.

In Petitioner's third TPS application, he argued that he was entitled to derivative continuous presence and residency through his mother, who was eligible for and ultimately was granted TPS. USCIS rejected his argument, ruling that applicants must meet all of the TPS requirements on their own merits. The IJ made the same ruling and concluded that Petitioner's removability had been shown by clear, unequivocal evidence. The BIA affirmed the IJ removal order, also rejecting

Petitioner's argument that the BIA should have imputed his mother's continuous presence and residency to him. Petitioner appeals.

## II. REVIEW STANDARDS

We review the BIA's legal determinations de novo. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). We give deference to an agency's interpretation of a statute that Congress has charged it with administering if the statute is silent or ambiguous on the question at hand and the agency's interpretation is not arbitrary, capricious, or manifestly contrary to the statute. *Carpio v. Holder*, 592 F.3d 1091, 1096-97 (10th Cir. 2010) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001), and *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984)). An "agency acts in a lawmaking capacity if the decision is binding precedent within the agency." *Efagene v. Holder*, 642 F.3d 918, 920 (10th Cir. 2011). Thus, we have held that *Chevron* deference applies to published BIA decisions and to a nonprecedential BIA decision if it relies on prior BIA precedent addressing the same question. *See id*.

Here, the BIA relied upon an earlier published BIA ruling, *In re Echeverria*, 25 I. & N. Dec. 512 (2011), rejecting the same derivative presence and residency argument asserted by Petitioner. Accordingly, we review the BIA's interpretation of the relevant implementing regulation, 8 C.F.R. § 1244.2, under the *Chevron* standard of deference. "An agency is entitled to *substantial* deference when it acts pursuant to an interpretation of its own regulation." *Id.*

- 3 -

In this case, the meaning of the TPS eligibility statute is plain, and the relevant precedent recognizes and applies that plain meaning.

## III.  ANALYSIS

### A.  TPS Eligibility

#### (1)  The TPS Program

Under the TPS program, nationals of certain designated foreign states may remain temporarily in the United States, but only during the time that country remains designated for the TPS program.  *See* 8 U.S.C. § 1254a(a)(1).  "Foreign states are selected for [the TPS] program based on certain conditions in the country, such as ongoing armed conflict, an environmental disaster, or some other extraordinary and temporary condition."  *Serrano v. United States. Att'y Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011); *see also* 8 U.S.C. § 1254a(b)(1).  El Salvador was designated for the TPS program on March 9, 2001, because of its 2001 earthquakes.  66 Fed. Reg. 14,214 (Mar. 9, 2001).  Its TPS designation has been extended on numerous occasions, but is currently set to expire on September 9, 2013. 77 Fed. Reg. 2,990 (Jan. 20, 2012).

Aliens are eligible for TPS if they are a national of a TPS designated state and they meet the following requirements:

(i) the alien has been continuously physically present in the United States since the effective date of the most recent designation of that state;
(ii) the alien has continuously resided in the United States since such date as the Attorney General may designate;

- 4 -

(iii) the alien is admissible as an immigrant, except as otherwise provided under paragraph (2)(A), and is not ineligible for temporary protected status under paragraph (2)(B); and

(iv) to the extent and in a manner which the Attorney General establishes, the alien registers for the temporary protected status under this section during a registration period of not less than 180 days.

8 U.S.C. § 1254a(c)(1)(A). The Attorney General adopted a regulation that includes a provision establishing the TPS registration deadlines. *See* 8 C.F.R. § 1244.2. The deadline provision permits an alien to file a late registration in four situations, including being the spouse or child of a TPS-eligible alien. *Id*. § 1244.2(f)(1), (2).[1]

To meet the TPS eligibility requirements as a national of El Salvador, Petitioner needed to reside continuously in the United States since February 13, 2001, and to be continuously physically present in the United States since March 9, 2001.

---

[1] The deadline provision states that an alien may be granted TPS if, in addition to the other statutory requirements, the alien:

(f)(1) Registers for Temporary Protected Status during the initial registration period announced by public notice in the Federal Register, or

(2) During any subsequent extension of such designation if at the time of the initial registration period:

(i) The applicant is a nonimmigrant or has been granted voluntary departure status or any relief from removal;

(ii) The applicant has an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal which is pending or subject to further review or appeal;

(iii) The applicant is a parolee or has a pending request for reparole; *or*

(iv) The applicant is a spouse or child of an alien currently eligible to be a TPS registrant.

8 C.F.R. § 1244.2(f)(1), (2) (emphasis on "or" added).

Petitioner's TPS application was filed four years after the initial registration period. But under § 1244.2(f)(2)(iv), he was permitted to file a late initial registration as the child of his TPS-eligible mother. As noted, the USCIS and the BIA denied Petitioner's TPS applications because he entered the United States in 2006.

### (2) Petitioner's Eligibility Arguments

Petitioner argues on appeal, as he did before the IJ and the BIA, that his mother's continuous presence and residency in the United States since before February 2001 should be imputed to him. Neither the TPS statute, § 1254a, nor its implementing regulation, § 1244.2, permits derivative TPS eligibility. Petitioner does not cite to any BIA or judicial decision that supports his interpretation of § 1254a or § 1244.2. Indeed, all BIA and published judicial precedent is to the contrary.

Two circuits and the BIA have held, contrary to Petitioner's argument, that each TPS applicant must independently satisfy the continuous residency and physical presence requirements. *See De Leon-Ochoa v. Att'y Gen. of United States*, 622 F.3d 341, 353-55 (3d Cir. 2010) (ruling that Congress spoke unambiguously when it required TPS applicants to demonstrate continuous presence and residency on their own merits); *Cervantes v. Holder*, 597 F.3d 229, 235-37 (4th Cir. 2010) (ruling that the BIA's rejection of derivative presence and residency was reasonable). In a published decision, the BIA, in reliance upon *De Leon-Ochoa* and *Cervantes* and the plain language of § 1254a(c)(1)(A) and § 1244.2, ruled that a TPS applicant, even

- 6 -

one who was entitled to file a late registration because of his or her parent's TPS-eligibility, must meet all initial eligibility requirements of § 1254a and § 1244.2 on his or her own merits. *Echeverria*, 25 I. & N. Dec. at 515-16. Here, the BIA relied upon *Echeverria* in rejecting Petitioner's argument that he is entitled to derive continuous presence and residency by virtue of his mother's.

The Supreme Court recently rejected substantially the same derivate-residency argument, namely, that the BIA should impute a parent's years of continuous residence to his or her child when interpreting the cancellation-of-removal statute, 8 U.S.C. § 1229b(a). *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2017 (2012). The Court held the BIA reasonably interpreted § 1229b(a) to require an alien to satisfy its requirements on his own, without counting his parent's years of lawful permanent residency or continuous residency. *Id.* The Court noted that nothing in the statute's text mentioned, let alone required, imputation. The BIA's interpretation was therefore consistent with the statute's text. *Id.*

The petitioners in *Martinez Gutierrez* argued that disallowing imputation in § 1229b(a) constituted arbitrary agency action because the BIA has allowed imputation in other immigration provisions. The Court rejected this argument, noting, as had the BIA, that the residency requirements in § 1229b(a) call for objective proof regarding place of residence, not subjective criteria, as was the case where the BIA has permitted imputation. *Id.* at 2020 ("The BIA's varied rulings on imputation thus largely follow from one straight-forward distinction.").

Notwithstanding this precedent, Petitioner presses two arguments: (a) the provision in the implementing regulation that permits the child of a TPS-eligible alien to file a late TPS registration should be read to support derivative presence and residency, and (b) the eligibility requirements should be liberally construed so that derivative presence and residency can foster family unity. We are not persuaded by either argument.

### (a) Late Registration Provision

As noted, a TPS applicant must register for TPS during the initial registration period "or" during any subsequent extension if at the time he is (among other possibilities) the child of a TPS-eligible alien. 8 C.F.R. §§ 1244.2(f)(1) & (2)(iv). Petitioner asserts that in § 1244.2(f)(2)'s list of the four possible ways one may permissibly file a late-registration, the word "or" can be read, not just as an exception to the registration deadline, but as an exception to *all* of the other TPS eligibility requirements. This assertion is without merit under the plain language of the statute and regulation.

Registration is but one of the several statutory eligibility criteria, each of which is mandatory as indicated by the word "and" in the list of statutory requirements. *See* 8 U.S.C. § 1254a(c)(1)(A); *see Hill v. Whitlock Oil Servs., Inc.*, 450 F.2d 170, 173 (10th Cir. 1971) (holding that all clauses are mandatory when they are phrased in the conjunctive). The word "or" relied upon by Petitioner is found only in the section of the implementing regulation that lists the four possible ways an

alien may qualify for late registration, as indicated by the word "or" preceding § 1244.2(f)(2)(iv). When "or" is used in a statute, "it is presumed to be used in the *disjunctive* sense unless the legislative intent is to the contrary." *United States v. O'Driscoll*, 761 F.2d 589, 597 (10th Cir. 1985). The word "or" in § 1244.2(f)(1)(iii) cannot mean, as Petitioner asserts, that his eligibility to register for TPS after the initial deadline eliminates the requirement to satisfy the other statutory TPS eligibility requirements. *See DeLeon-Ochoa*, 622 F.3d at 353 (Section 1254a "unquestionably articulates a requirement that a TPS applicant continuously reside in the United States from the date designated by the Attorney General.").

Indeed, as noted by our sister circuits, since § 1244.2 was adopted in 1998, the Attorney General has consistently and explicitly stated that a late initial registrant "'must meet all other requirements of TPS including presence in the United States'" and that late registration is not intended to extend protection to persons *who arrived in the United States . . . after the [TPS program] designation was* made.'" *Cervantes,* 597 F.3d at 235 (quoting 63 Fed. Reg. 63,593, 63,594 (Nov. 16, 1998)); *See De Leon-Ochoa*, 622 F.3d 341, 354-56; *see also Echeverria*, 25 I. & N. Dec. at 517. Thus, the plain meaning of the word "and" in § 1254a(c)(1)(A) evinces Congress's unambiguous intent to require TPS applicants to meet *each* eligibility requirement on their own merits.

### (b)  Family Unity

Petitioner argues that, because § 1254a does not expressly disallow derivative residency and physical presence, the courts should liberally construe it to permit derivative status to encourage family unity.  But, like the Third Circuit, "[w]e simply will not read into an unambiguous statutory requirement an exception that converts this statute into a program of entry for an alien."  *De Leon-Ochoa*, 622 F.3d at 353 ("[A]lthough we agree . . . that our immigration framework values family unity, we cannot on that basis alone read into the unambiguous TPS statute an instruction by Congress to permit satisfaction of clear statutory requirements via the disputed mechanism of imputation.").  Unpersuaded by similar arguments, the Court in *Martinez Gutierrez* explained that family unity and relief to aliens with strong ties to the United States are not Congress's only goals in formulating immigration laws. 132 S. Ct. at 2019.  "We cannot read a silent statute as requiring (not merely allowing) imputation just because that rule would be family-friendly."  *Id*.  Whatever merit Petitioner's argument may have as a policy matter, it fails in the face of the statute.

We hold that the BIA correctly ruled that Petitioner is statutorily ineligible for TPS.

**B. Constitutional Challenges**

**(1) Equal Protection**

Petitioner argues that forbidding him to derive continuous presence and residency from his mother violates the Equal Protection Clause because minor children of refugees are entitled to derivative refugee status and the Violence Against Women Act of 1994 includes immigrant family preferences.

We review de novo a challenge to a statute's constitutionality. *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999). In the immigration context, the "guarantee of equal protection . . . provides that a statute shall not treat similarly situated persons differently unless the dissimilar treatment is rationally related to a legitimate legislative objective." *Id.* Judicial inquiry into immigration legislation is limited, however, given that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal quotation marks omitted). "Thus, in determining whether a rational basis exists for making distinctions between classes of aliens, we are especially deferential." *Latu v. Ashcroft*, 375 F.3d 1012, 1020 (10th Cir. 2004).

"'[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Latu*, 375 F.3d at 1020 (quoting *FCC*

*v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "On rational-basis review, those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id*. (internal quotation marks omitted).

We conclude that § 1254a does not violate Petitioner's equal protection rights because there is a rational basis for his TPS ineligibility. As noted previously, a country is designated for TPS because conditions in that country temporarily prevent its nationals from returning safely or because that country is unable to handle the return of its nationals adequately. *See* 8 U.S.C. § 1254a(b). Congress directed that TPS not be used as a program for aliens to enter and later obtain TPS status. *See* 8 U.S.C. § 1254a(c)(5) ("Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for temporary protected status under this section.").

Accordingly, TPS is granted to eligible nationals who already reside in the United States when their country is designated for TPS. *See De Leon-Ochoa*, 662 F.3d at 353 ("By the terms of the statute, the TPS program was designed to shield *aliens already in the country* from removal when a natural disaster or similar occurrence has rendered removal unsafe." (emphasis added)). The TPS statute "does *not* create an admissions program. It is designed to protect individuals already in the United States and gives no alien any right to come to the United States." H.R. Rep. No. 101-245, Vol. 2, Doc. 17, at 13 (1989).

In light of the underlying purpose of TPS—to allow foreign nationals who are already here to stay temporarily due to safety concerns in their home country—it is rational to limit the program to those who are here and not to include those who, after their country is designated for TPS, come here illegally and seek to stay under a program not designed to give aliens a right to come to the United States. *See De Leon-Ochoa*, 662 F.3d at 353-54 ("We simply will not read into an unambiguous statutory requirement an exception that converts [the TPS statute] into a program of entry for an alien.").

Petitioner's equal protection argument therefore fails. Congress had a rational basis to limit TPS eligibility to those aliens who were already present in the United States at the time of the initial TPS designation or who resided here since the date designated by the Attorney General.

**(2) Due Process**

Finally, Petitioner argues that the IJ and the BIA denied him due process because he was not given access to visa records in his alien file (A-file). "An alien in removal proceedings is entitled only to the Fifth Amendment guarantee of fundamental fairness, or in other words, only to procedural due process, which provides the opportunity to be heard at a meaningful time and in a meaningful manner." *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009) (brackets and internal quotation marks omitted). To establish a due process violation, an alien must

- 13 -

show prejudice.  *See id.* ("To prevail on a due process claim, an alien must establish not only error, but prejudice.").

Petitioner fails to establish prejudice.  Even assuming that Petitioner was entitled and was denied access to documents in his A-file, he cannot change that he is statutorily ineligible for TPS because he entered the United States illegally in 2006 and did not meet the TPS continuous residency and presence requirements.  *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1208-09 (10th Cir. 2004) (en banc) (an alien asserting a due process claim must show prejudice by demonstrating there is a reasonable likelihood the outcome would have been different).

The petition for review is DENIED.  Petitioner's motion to proceed in forma pauperis is GRANTED.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge