*396 COWEN, Circuit Judge,
dissenting.
The majority offers a well-reasoned reading of Section 401. In fact, the majority may even offer the most persuasive interpretation of this statutory provision. However, it is not this Court’s job to adopt what it believes to be the best reading of the statute. Instead, we must “use the familiar two-step analysis set forth in Chevron.” (Majority Opinion at 12.) Under this doctrine, we must first decide whether or not “Congress has directly spoken to the precise question at issue.” Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If we conclude that the statute is silent or ambiguous with respect to the specific question at issue, the Court must then consider whether the agency’s approach is based on a permissible construction of the statute. See, e.g., id. at 843, 104 S.Ct. 2778. “ ‘Chevron deference is premised on the idea that where Congress has left a gap or ambiguity in a statute within an agency’s jurisdiction, that agency has the power to fill or clarify the relevant provisions.’ ” Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 299 (3d Cir.2014) (quoting Core Commnc’ns, Inc. v. Verizon Pa. Inc., 493 F.3d 333, 343 (3d Cir.2007)), cert. denied, — U.S. -, 135 S.Ct. 1860, 191 L.Ed.2d 726 (2015). Accordingly, the Court must leave undisturbed “ ‘a reasonable accommodation of conflicting policies that were committed to the agency’s care by the statute ... unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.’ ” Chevron,' 467 U.S. at 845, 104 S.Ct. 2778 (citation omitted). We must defer to an agency’s reasonable construction of a statute— “whether or not it is the only possible interpretation or even the one a court might think best.” Holder v. Martinez Gutierrez, — U.S. -, 132 S.Ct. 2011, 2017, 182 L.Ed.2d 922 (2012) (citing Chevron, 467 U.S. at 843-44 & n. 11, 104 S.Ct. 2778). Because I believe that Section 401 is ambiguous and that the Reclassification Rule constitutes a permissible interpretation of this statutory provision, I must respectfully dissent.
“Section 401 refers to subsection (d) in its entirety” (which includes subsection (d)(10)), expressly requires the Secretary to treat a Section 401 hospital as being located in the rural area (as defined in subsection (d)(2)(D)) of the State in which the hospital is located, and, in the process, “uses mandatory language” (i.e., provides that the Secretary “shall” treat the hospital as being located in a rural area). (Id. at 21.) Even if Section 401 unambiguously requires that a Section 401 hospital be treated as though it were a hospital located in a rural area for purposes of subsection (d)(10), it does not follow that this statutory provision unambiguously requires the Secretary and the Board to consider applications filed by Section 401 hospitals under the same exact criteria the Secretary adopted to govern reclassification applications filed by hospitals physically located in rural areas.
I agree with the District Court (as well as the United States District Court for the District of Connecticut) that Section 401 is silent as to whether hospitals reclassified as rural under Section 401 must be considered eligible for Board reclassification pursuant to subsection (d)(10).[1] See Lawrence *397 & Mem’l Hosp. v. Burwell, Civ. No. 3:13cvl495 (JBA), 2014 WL 7338859, at *6 (D.Conn. Dec. 22, 2014); Geisinger Cmty. Med. Ctr. v. Burwell, 73 F.Supp.3d 507, 515-16, 2014 WL 7338751, at *8 (M.D.Pa. 2014); Lawrence & Mem’l Hosp. v. Sebelius, 986 F.Supp.2d 124, 135 (D.Conn.2013). Section 401 does not expressly address the specific criteria that must be satisfied in order to obtain Board reclassification. Even though it contains mandatory language, this statutory provision does not expressly direct the Secretary or the Board to treat Section 401 hospitals exactly the same as hospitals physically located in rural areas as part of the Board reclassification process. In fact, the provision does not address the Board reclassification process at all — nor does it take into. account the intersection or relationship between Board reclassification under subsection (d)(10), on the one hand, and Section 401 reclassification, on the other hand.
According to the majority, the District Court and Appellees have read ambiguity into the statute based on what it does not say, as opposed to what it plainly says. However, “what it does not say” (id. at 17) is of special significance here given Congress’s creation of two reclassification mechanisms. Both Section 401 and subsection (d)(10) effectively serve as exceptions to the general principle that a hospital’s reimbursement is tied to its physical location. Does Section 401 unambiguously grant hospitals like Geisinger the right “to take advantage of both reclassification procedures almost simultaneously, piling exception on top of exception” — and to do so under the same Board reclassification standards that otherwise apply to hospitals physically located in rural areas? (Appel-lees’ Brief at 25.) Given the statutory silence, the answer to this question must be “No.” According to Appellees, Section 401 could reasonably be read as a directive for the Secretary to treat Section 401 hospitals as rural for all purposes, thereby prohibiting any further reclassification under subsection (d)(10). While this may not be the best reading of the statutory provision, the majority goes too far by claiming that it is contrary to the plain and natural reading of this provision. After all, Section 401 broadly applies to subsection (d) and states, inter alia, that the Secretary “shall treat” the hospital as being located in the “rural” area of the State. Congress, in any event, left what could only be considered a “ ‘gap’ ” between two distinct reclassification mechanisms, which the Secretary attempted “ ‘to fill’ ” by adopting the Reclassification Rule. Santomenno, 768 F.3d at 299 (citation omitted). In fact, Congress delegated to the Secretary broad discretionary authority over the Board reclassification process.[2]
*398 Subsection (d)(10)(D)(i) provides that “[t]he Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph.” The majority acknowledges that “the Secretary is unquestionably authorized "to issue guidelines regarding Board reclassification, e.g., to design the proximity standards for urban versus rural hospitals,” but it underestimates the scope and significance of this delegation of authority. (Majority Opinion at 20.) This Court has recognized that Congress established the Board to pass on applications for reclassification “according to certain standards and guidelines” and then “gave the Secretary the authority to formulate the guidelines to be used by the [Board].” Robert Wood Johnson Univ. Hosp. v. Thompson, 297 F.3d 273, 276 (3d Cir.2002) (citing subsection (d)(10)(D) and 42 C.F.R. § 412.230 et seq.y, see also, e.g., Athens Comty. Hosp., Inc. v. Shalala, 21 F.3d 1176, 1179 (D.C.Cir.1994) (indicating that Congress delegated to Secretary authority to determine degree to which Board’s discretion should be limited); Universal Health Servs. of McAllen, Inc. v. Sullivan, 770 F.Supp. 704, 716-17 (D.D.C.1991) (explaining that Congress intended to grant Secretary power to establish substantive criteria for Board reclassification), aff'd mem., 978 F.2d 745 (D.C.Cir.1992). “The broad deference of Chevron is even more appropriate in cases that involve a ‘complex and highly technical regulatory program,’ such as Medicare, which ‘require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.’ ” Robert Wood Johnson, 297 F.3d at 282 (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)); see also, e.g., Universal Health Servs., 770 F.Supp. at 718 (“Judicial deference is particularly appropriate because the Secretary’s obligation to promulgate reclassification guidelines involves an ‘ “accommodation of conflicting policies that were committed to the agency’s care by statute, ...” ’ [Chevron, 467 U.S. at 845, 104 S.Ct. 2778] (citations omitted). As previously discussed, the Secretary’s duty to ensure budget neutrality is at odds, with his duty to reclassify hospitals so that they may receive increased Medicare reimbursement. The Secretary, as sole administrator of the Medicare Act, is in a unique position to evaluate and reconcile the competing policy concerns within the Medicare program.”).
Most of the substantive standards or criteria that the Board uses to dispose of reclassification applications are set forth in the Secretary’s own regulations. Congress did expressly direct the Secretary to include guidelines for, inter alia, “comparing wages” in the area in which the hospital is classified and the area in which the hospital is applying to be classified. § 1395ww(d)(10)(D)(i)(I). It also specified that the guidelines shall provide for the Board to base any comparison of the “average hourly wage” on the average of the AHW in the most recently published data and such amount from each of the two immediately preceding surveys. § 1395ww(d)(10)(D)(vi). “Under the guidelines published by the Secretary under clause (i), in the case of a hospital which has ever been classified by the Secretary as a rural referral center under paragraph (5)(C), the Board may not reject the application of the hospital under this paragraph on the basis of any comparison between the average hourly wage of the hospital and the average hourly wage of hospitals in the area in which it is located.” § 1395ww(d)(10)(D)(iii). In turn, it was the Secretary — and not Congress— *399 that then adopted the specific criteria that a hospital must meet, i.e., a basic proximity requirement as well as standards for comparing the hospital’s AHW with the AHW of other hospitals located in the area in which the hospital is located and with the AHW of hospitals in the area to which it seeks to reclassify. See, e.g., Universal Health Servs., 770 F.Supp. at 706-22 (rejecting challenge to Secretary’s proximity requirement). It was also the Secretary that chose to treat urban and rural hospitals differently for.purposes of these criteria by, among other things, specifying disparate proximity criteria for urban and rural hospitals. I note that subsection (d)(10) does not even use the terms “urban hospital,” “hospital located in an urban area,” or “rural hospital.” Although it does refer to RRCs, the subsection expressly mentions “hospitals located in a rural area” only once, and it does so to specify that two Board members shall be representatives of such hospitals. § 1395ww(d)(10)(B)(i).
The majority appears to suggest that this delegation of authority is entitled to little, if any weight, in the current inquiry because it was set forth in subsection (d)(10) — and not Section 401. According to the majority, “Section 401’s mandate that the Secretary shall treat Section 401 hospitals as rural without adding any discretionary language as Congress used in subsection (d)(10) and elsewhere in Section 401 itself lends itself to the opposite conclusion [that the Secretary is not “authorized to disregard the plain languáge of Section 401”].” (Id. at 20-21 (citations omitted).) As the majority recognized, we nevertheless must read the language of a statutory provision in its broader context. See, e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).
Section 401 itself purportedly amends subsection (d)(10) (which was enacted ten years earlier). It is this subsection (and not Section 401) that establishes the Board and grants the Secretary the power to develop guidelines for the Board. It is reasonable to conclude that Congress believed there was no need to add additional language expressly granting the Secretary power to adopt regulations regarding the eligibility of Section 401 hospitals for Board reclassification (and the criteria to be used in assessing their applications for Board reclassification) because Congress had already delegated to the Secretary broad discretionary authority over the entire Board reclassification process. In subsection (d)(10)(D)(iii), Congress expressly prohibited the Secretary from adopting any guideline allowing the Board to reject an application filed by a hospital that has at any time been classified as an RRC on the basis of a comparison of its AHW to the, AHW of hospitals in the area in which it is located. Congress similarly could have amended subsection- (d)(10) to add, for instance, language directing the Secretary to publish a guideline requiring the Board to consider applications filed by Section 401 hospitals under the same exact criteria that govern reclassification applications filed by hospitals physically located in rural areas. It did not do so, and I find that this fact strongly weighs against the majority’s conclusion that Congress unambiguously expressed its intent that the Secretary shall treat Section 401 hospitals as rural for Board reclassification purposes. (Cf, e.g., id. at 20-21 (“‘[W]here Congress includes particular language in one section of a statute but omits it from another, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.’ Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) *400 (alteration in original) (internal quotation marks omitted).”)-)
Because I conclude that Congress has not “directly spoken to the precise question at issue” in this case, Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778, I must consider whether the Reclassification Rule constitutes a permissible construction of Section 401. Given the statutory ambiguity, it was the Secretary’s task — exercising the broad discretionary authority granted under subsection (d)(10) — to attempt to fill the gap that exists between two reclassification mechanisms. See, e.g., Santomenno, 768 F.3d at 299. It is then our obligation to decide whether this “ ‘interpretation is reasonable in light of the language, policies, and legislative history’ ” of Section 401 and the statutory scheme as a whole. United States v. McGee, 763 F.3d 304, 315 (3d Cir.2014) (quoting GenOn REMA, LLC v. EPA, 722 F.3d 513, 522 (3d Cir.2013), cert. denied, — U.S.-, 135 S.Ct. 1402, 191 L.Ed.2d 361 (2015)). In light of the fact that Chevron deference is especially appropriate in the Medicare context, see, e.g., Robert Wood Johnson, 297 F.3d at 282, I believe that the Reclassification Rule satisfies Chevron Step Two.
As the District Court aptly pointed out in its ruling, “[i]t cannot be said that the Secretary’s regulation, which was promulgated to avoid permitting a hospital to be treated as rural for some purposes and as urban for others allowing the hospital to receive inappropriate reimbursements, was unreasonable, even if the plaintiff can point to other reasonable policy choices.” Geisinger, 73 F.Supp.3d at 518, 2014 WL 7338751, at *11. In the respective preambles to the proposed and final rules implementing Section 401, the Secretary addressed the statutory language, identified her primary concern about this legislation (e.g., that hospitals physically located in urban areas might try to take advantage of Section 401 by obtaining reclassification under this statutory provision and the various benefits accorded to rural hospitals and then seek reclassification under subsection (d)(10) back to urban areas for standardized amount and wage index purposes), explained why such a result would be inappropriate, and considered but rejected alternative approaches. Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems & Fiscal Year 2001 Rates, 65 Fed.Reg. 47,054, 47,087-89 (Aug. 1, 2000); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems & Fiscal Year 2001 Rates, 65 Fed.Reg. 26,282, 26,-308 (May 5, 2000); see also, e.g., Lawrence & Mem’l Hosp., 2014 WL 7338859, at *8 (“[T]he record shows that the Secretary’s decision was deliberate, logical, and considered.”). She expressly addressed the Conference Report accompanying Section 401. 65 Fed.Reg. at 47,087-89; 65 Fed.Reg. at 26,308. By stating that the Section 401 hospitals shall be eligible for Board reclassification and that “[t]he Board shall regard such hospitals as rural,” the report does weigh in favor of Geisinger’s reading of this statutory provision. H.R. Conf. Rep. No. 106-479, 512 (1999). However, this report (which did not mention subsection (d)(10)’s delegation of authority to the Secretary and did not expressly consider the potential problems that could arise from the existence of two distinct reclassification mechanisms) is insufficient to establish that Congress would never have sanctioned the Secretary’s Reclassification Rule. See, e.g., Chevron, 467 U.S. at 845, 104 S.Ct. 2778.. In the end, the Secretary appropriately exercised the power she was granted by Congress so as to reconcile the distinct reclassification mechanisms created by Congress.
For the foregoing reasons, I would affirm the order of the District Court grant *401 ing Appellees’ motion for summary 'judgment.

. It appears that, although the Reclassification Rule was promulgated in 2000, only two lawsuits have been filed (to date) challenging the lawfulness of this rule. In addition to the current proceeding filed by Geisinger in 2014, Lawrence & Memorial Hospital commenced an action in the District of Connecticut in 2013 attacking the Reclassification Rule as *397 unlawful under the terms of Section 401. The Lawrence & Memorial Hospital court initially denied the hospital's motion for a preliminary injunction (enjoining defendants from acting on its application for Board reclassification under subsection (d)(10) until the district court could hold a hearing on the merits of its action). See Lawrence & Mem’l Hosp., 986 F.Supp.2d at 127-38. It subsequently granted summary judgment in favor of the defendants. See Lawrence & Mem’l Hosp., 2014 WL 7338859, at *1-10. Lawrence & Memorial Hospital’s appeal is currently pending before the Second Circuit.

. I further note that the majority also relies on what Section 401 "does not say” at several points in its opinion. (See Majority Opinion at 17) ("If the phrase was not intended to cover subsection (d)(10), contrary to the literal reading of the text, then Congress would have noted which paragraphs of subsection (d) were specifically excluded or included."), 19 ("Section 401 does not say that we cannot reclassify the Section 401 hospital as urban.”), 20-21 ("Rather, Section 401's mandate that the Secretary shall treat Section 401 hospitals as rural without adding any discretionary language as Congress used in subsection (d)(10) and elsewhere in Section 401 *398 itself, lends itself to the opposite conclusion.” (citations omitted)).