

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 18 2015

Abel Acosta, Clerk

Richard Taylor
No. 816002
Telford Unit
3899 State Hwy 98
New Boston, Tx 75570

August 14, 2015

Texas Court of Criminal
Appeals, Clerk of Court
P.O. Box 12308
Austin, Tx 78711-2308

Re:  No. WR-41,683-02, Ex parte Richard Owen Taylor

Dear Clerk:

Enclosed please kindly find my Objections to be filed with the papers in this case.  The trial court clerk has submitted the record to this court.

With kindest regards, I am

Very truly yours,

Richard Owen Taylor
Pro se Applicant

Encl.
cc:  Andrea Jacobs

41,683-04

NO. WR-41,683-02

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

**Ex parte**

**Richard Owen Taylor**

On Successive Application for a Writ of Habeas Corpus
Seeking relief from Final Conviction Under Code of
Criminal Procedure, Article 11.07; in the Criminal
District Court Number Four of Tarrant County,
Texas, in Cause Number C-4-010509-0577954-B

**Taylor's Objections to the Trial Court's Adoption
of State's Proposed Memorandum, Findings of Fact
and Conclusions of Law**

Richard Owen Taylor
TDCJ# 816002
Telford Unit
3899 State Hwy 98
New Boston, Tx 75570

Pro se Applicant

Date: August 14, 2015

**To the Honorable Court of Criminal Appeals:**

Taylor urges this Court to reject the trial court's findings of fact, conclusions of law, and recommendations to dismiss this case and to remand this case for full consideration on the merits. The claims have not yet been considered. In deciding whether the merits of Taylor's successive application should be considered, this Court is presented with four straightforward issues:

* The Supreme Court recently held that the 6th Amendment guarantees the right to effective assistance of counsel during a plea consideration and negotiation. In Taylor's initial application, he alleged that his 40 year plea bargain was involuntarily made, but did not complain about counsel's ineffectiveness during the prior 25 year plea offer because no constitutional rights had attached. Could Taylor have formulated this argument in his initial application and, if not, was counsel's ineffectiveness during the prior plea negotiation and consideration previously resolved?

* The Supreme Court recently held that persons who commit crimes while they are under 18 years of age are not as morally culpable as similarly disposed adult offenders, and noted the difficulties for even experts to differentiate between immaturity, and the rare juvenile offender whose crimes reflect irreperable corruption. This Court has retroactively applied this new rule. Was the factual or legal basis for the claim of newly recognized mitigating factors unavailable to Taylor when he filed the initial application?

* In Ex parte Tiede, this Court found that a revelation of suppressed childhood trauma was newly available relevant scientific evidence. In this case, Taylor had a recent revelation of suppressed sexual abuse by his older brother, who not only orchestrated the aggravated robbery, but who influenced Taylor into participating. This revelation occurred some 16 years after his initial application was filed. Does Taylor's successive application contain sufficient specific facts establishing that the legal or factual basis for his claim was unavailable at the time he filed his initial application?

\* The Supreme Court has recently held that the 8th Amendment mandates States to provide juveniles with a meanginful opportunity to return to society once they have demonstrated maturity and rehabilitation. Does this new rule create a liberty interest in parole for juvenile offenders?

## Argument and Authorities

**A.** **The Court should consider the merits of this application.**

Article 11.07 § 4 sets out the procedure for filing a successive application for writ of habeas corpus. The Article provides that:

(a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal bisis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

(b) For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, or a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

(c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

Tex. Code Crim. Proc. Ann. art. 11.07, § 4.

Taylor has stated sufficient specific facts establishing that

his first and second grounds for relief could not have been raised in his initial application.

**1. The courts did not recognize plea bargaining procedings as a critical stage requiring effective assistance of counsel until the U.S. Supreme Court decisions in <u>Lafler</u> and <u>Frye</u>.**

The Sixth Amendment's guarantee of "assistance of counsel" for the defense of an accused has long been held to mean that a criminal defendant has a right to the effective assistance of counsel. The Supreme Court has interpreted this right as extending to all "critical stages" of a criminal proceeding. In <u>Missouri v. Frye</u>, the Court examined the issue of whether the Sixth Amendment's guarantee of effective assistance of counsel encompasses the negotiation and consideration of plea offers.[1]

In <u>Frye</u>, the defendant was accused of driving with a revoked license – an offense for which Frye had been convicted three times before. The prosecution extended two alternative plea recommendations. First, the prosecution proposed a three-year sentence with a guilty plea to a felony charge including no probation recommendation and a suggestion that Frye serve ten days "shock time" in jail. Alternatively, the prosecution suggested the reduction of Frye's charges to a misdemeanor and a ninety-day jail sentence if Frye agreed to plead guilty. Each recommendation was formal and included an expiration date. Defense counsel allowed both offers to lapse without communicating either of the prosecution's proposed plea recommendations

---

1.     132 S.Ct. 1399 (2012).

to Frye. Subsequently, he was sentenced to three years in jail.

After learning of the lapsed plea offers, Frye applied for relief after the court entered his conviction, alleging ineffective assistance of counsel. He argued that had he known of the offered plea recommendations, he would have pleaded guilty to the misdemeanor. Although the trial court denied the post-conviction relief, the Missouri court of appeals concluded that defense counsel rendered sub-par performance and that this sub-par performance resulted in prejudice to Frye because he pled guilty to a felony rather than a misdemeanor. Thus, the court concluded that Frye had shown a violation of the Sixth Amendment under the test set forth in Strickland v. Washington.[2]

The Supreme Court agreed. In holding that the Sixth Amendment guaranteed effective assistance of counsel extended to the consideration and negotiation of pleas, the Court recognized the prevalance of plea bargaining within the criminal justice system. Noting that 95% of criminal convictions are based upon guilty pleas, the Court determined that "it is insufficient simply to point to the guarantee of a fair trial as a backdrop that inoculates any errors in the pretrial process." Thus, the Court acknowledged that failing to recognize the constitutional guarantee of effective assistance of counsel to the plea bargaining stage would deny the accused the right to guidance "at the only stage when legal aid and advice would help him."

---

2.    466 U.S. 668, 686 (1984).

The Court outlined the steps a defendant must take to show that a violation of a defendant's Sixth Amendment right to effective assistance of counsel has been violated at the plea bargaining stage. Under the test set forth in Strickland, the accused must prove (1) that counsel's assistance had been deficient, and (2)that, as a result of the deficient assistance, the defendant was prejudiced.

In cases alleging ineffective assistance in the plea bargaining stage, the Court held that defense counsel has an obligation to communicate plea offers to the accused and to advise the accused as to the favorability of the recommendation. Thus, if the attorney for the accused fails to communicate a plea recommendation to the accused and "allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." As a result, if a plea recommendation lapses and defense counsel fails to communicate the offer to his client, his conduct is "deficient" under the first prong of the Strickland test.

Next, the defendant must show prejudice resulting from the ineffective assistance of counsel. In order to demonstrate this, the defendant must show that there is a "reasonable probability" that they would have accepted the plea recommendation. The defendant must also show a reasonable probability that the plea would have been accepted by the court and not withdrawn by the prosecution. In essence, where counsel fails to communicate a plea recommendation, the defendant must prove that he would have accepted the plea and

not gone to trial, or that the later plea accepted was less favorable than the plea initially offered.

In a similar landmark decision, the Supreme Court also held that criminal defendant's Sixth Amendment right to effective assistance of counsel during plea negotiations, included when a defendant rejects a plea bargain because of bad legal advice. In Lafler v. Cooper, the attorney mistakenly informed the defendant that the state could not establish intent to murder, as necessary element of its case, because the defendant had shot the victim below her waist.[3] Due to his attorney's advice, the defendant rejected a guilty plea and was later convicted at trial. The defendant was sentenced to a much longer prison term than the plea offer.

In a five-four majority decision, Justice Kenedy reasoned that the right to effective counsel extends to the plea bargaining process because plea bargaining is so pervasive in the justice system. The Court rejected the argument that a fair trial remedies defense counsel's ineptitude during plea-bargaining, because the negotiation of a plea is during a "critical stage" of the criminal proceeding for a defendant.[4]

The majority focused on the standards for prejudice and the appropriate remedy. The Court held that the defendant has the burden to show that the defendant would have accepted the plea "but for the ineffective advice of counsel', and the sentence would have been

_____

3.    132 S.Ct. 1376 (2012).
4.    Id., at 1385.

less severe under the plea offer than the judgment imposed.[5] The remedy must neutralize the constitutional violation, without granting a windfall to the defendant. The Court found that this remedy could be a trial court's evidentiary hearing and re-sentencing, or in situations where a mandatory sentence is required, the court could require the prosecution to reoffer the plea offer. The trial court could then exercise its discretion in determining whether to vacate the conviction and to re-sentence the defendant under the plea bargain or leave the conviction undisturbed.

The legal basis for Ground One was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, or a court of appeals of the United States, or a court of appellate jurisdiction of this state until the United States Supreme Court decisions in Lafler and Frye.[6] Consequently, this claim and issue could not have been presented previously in Taylor's original application prior to its final disposition on October 15, 1999.[7]

A.     The plea bargain issue was not litigated in the initial application:

In the trial court's findings of fact and conclusions of law the court found that Ground Number One has been litigated in the initial application [Findings Nos. 8-10; Conclusions Nos. 7,9,11]. Taylor disagrees and respectfully objects to these findings and

_____

5.     Id., at 1385.
6.     See Lafler, 132 S.Ct. 1399 (2012) and Frye, 132 S.Ct. 1376 (2012).
7.     See Ex parte Taylor, No. WR-41,683-01 (Tex.Crim.App. Oct. 15, 1999).

conclusions as the habeas record reflects otherwise.

The trial court correctly finds that the initial application alleged that counsel was ineffective by causing Taylor's plea to the 40 year plea-bargain to be involuntary-based on counsel's misleading information [Finding No. 5]. Taylor sought to withdraw his guilty plea to his current 40 year plea bargain term for murder. The application, however, makes no mention of counsel being ineffective during a prior plea negotiation and consideration of 25 years for the offense of aggravated robbery. This is because there was no legal basis from which Taylor could formulate a constitutional claim.

In Ground One Taylor claims, as did Frye, that his trial counsel, Ms. Nekhom, failed in her obligation to advise him as to the favorability of the 25 year plea recommendation [or the subsequent 33 year offer], prior to the expiration of such offer.[8] Taylor makes these statements under oath, also as did Frye.[9] Ms. Nekhom was aware, at the time of the plea offer, that: (1)Taylor and Clark had signed written statements admitting to the offense, (2)Clark was found guilty of capital murder and sentenced to life, (3)Under the law of parties, it was highly likely that Taylor would also be found guilty of capital murder and sentenced to life, (4)probation would never be an option during plea negotiations, (5)there was no available trial strategy, and (6)the Prosecutor's practice is to begin raising plea offers as the case approaches trial. She

---

8. See Exhibit A, affidavit of Richard Owen Taylor.
9. Id.

further admits in an affidavit that part of her strategic consideration of the case was "the ultimate goal assigned to me by the Applicant, i.e.: a reduced punishment for the crimes for which he confessed his guilty to me."[10] Yet, at the only stage when legal aid and advice would help Taylor, Ms. Nekhom provided him absolutely no guidance, allowing Taylor to reject the 25 year plea offer - while knowing this would be the most favorable plea offer the State would offer Taylor.[11]

It was not until roughtly five months later when the case was on the brink of trial that Ms. Nekhom provided guidance at the plea bargaining stage and advised Taylor to accept a plea offer to murder, which carried a 40 year sentence.[12] Ms. Nekhom summoned Taylor's family members for help because she had been aware for a long time, possibly from the very beginning, that this was a plea bargaining case and that Taylor needed to accept this very last offer.[13] If not, Ms. Nekhom was certain that Taylor would be found guilty of capital murder and sentenced to life, as did his co-defendant, Clark.[14] Indeed, this was a legal conclusion Ms. Nekhom had made long before the plea offer to 25 years was ever recommended by the prosecution. Yet, she withheld this information from Taylor until a more severe plea offer was made by the prosecution.[15]

---

10. See State's Exh. A, page 2.
11. See Exhibit A, affidavit of Richard Owen Taylor.
12. Id., see also State's Exh. A, page 2.
13. See Exhibit B, affidavit of Patricia Taylor; see also State's Exh. A, page 2.
14. See Exhibit A and B, supra.
15. See Exhibit A, supra.

Taylor accepted the plea offer to murder, with a 40 year sentence based on the advice by Ms. Nekhom. But, had Taylor received this advice when the 25 years was offered, he would have accepted the offer.[16] Like the claims in Frye, the claims in this case meet the two prong test set out in Strickland.

This issue was never raised or considered by the trial court in the initial application, nor was counsel questioned on this legal matter.

This Court should therefore consider the merits in Ground One.

2. **The courts did not recognize the salient characteristics of a juvenile as a mitigating factor until the U.S. Supreme Court decisions in Graham and Miller, adopted by this Court in Ex parte Maxwell.**

In Roper v. Simmons, the Supreme Court recently recognized that persons who commit crimes while they are under 18 years of age are not as morally culpable as similarly disposed adult offenders, and prohibited the imposition of the death penalty on juvenile offenders, regardless of the heinousness of their crime.[17] As compared to adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptable to negative influences and outside pressures, including peer pressure"; and their characters are "not well formed."[18] These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between immaturity, and the rare

---

16.    See Exhibit A, supra.
17.    125 S.Ct. 1183, 1194 (2005).
18.    Id., at 1183.

juvenile offender whose crime reflects irreperable corruption.[19]

The Supreme Court has gone a step further regarding the imposition of life sentences on juveniles convicted of committing a non-murder offense. On May 17, 2010, the Supreme Court issued its decision in Graham v. Florida.[20] Writing for a 5-to-4 majority, Justice Anthony Kenedy called life without parole an "especially harsh punishment" for a juvenile and said that while states may be permitted to keep young offenders locked up, they must give defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." As such, juveniles could not receive a life sentence for non-murder offenses. The Graham decision further likened life without parole for juveniles to the death penalty, thereby evoking a second line of cases. In those decisions, the Supreme Court has required sentencing authorities to consider the characteristics of a defendant and the details of his offense before sentencing him.[21]

The Supreme Court expanded the Graham decision in its decision issued in Miller v. Alabama.[22] In Miller, the confluences of the two lines of precedent relied upon in Graham led to the conclusion that mandatory life without parole for juveniles violates the Eighth Amendment.[23] Such would violate the evolving standards of decency that mark the progress of a maturing society.[24]

The rationale underlying the Graham and Miller decisions indicate

---

19. Id., at 1183.
20. 132 S.Ct. 2011 (2010).
21. Id.
22. 132 S.Ct. 2455 (2012).
23. Id.
24. Id.

that mitigating factors demonstrating a lessened culpability should result in a more lenient sentence. Here, Taylor was only 17 years of age at the time of the offense at issue. Taylor's youth is the very mitigating factor raised in cases such as Graham and Miller. This, alone, indicates that Taylor was not as culpable as a similar situated adult. Taylor had a lack of maturity and an underdeveloped sense of responsibility. He was more vulnerable or susceptable to negative influences and outside pressures, especially from his older brother, Clark. And, Taylor's character was not as well formed as compared to adults.

In the trial court's findings of fact and conclusions of law, the court found that the first part of Ground Number Two could have been raised in his first application [Findings Nos. 11,12,13,14,15, 16,18,19; Conclusions Nos. 7,9,10,12,13]. Taylor disagrees and respectfully objects because, until Graham and Miller, courts did not consider the age of the defendant as a mitigating factor - to this degree - demonstrating a lessened culpability. These salient characteristics outlined by expert psychologists in these cases were not available to the courts until the Supreme Court decided these cases. Moreover, Texas did not consider a defendant 17 years of age as a juvenile.

Further, this Court held in Ex parte Maxwell, that Miller does apply retroactively to post-conviction challenges.[25] Thus, this Court has already determined that the rationale in Graham and Miller

---

25. See No. AP-76,964 (Tex.Crim.App. 2014).

apply to Texas offenders who committed their offense while under 18 years of age. Consequently, the Supreme Court and this Court's decisions were not available to Taylor prior to the final disposition of the initial application on October 15, 1999.[26] Taylor could not have previously presented the claims in Ground Two.

This Court should therefore consider the merits in Ground Two.

3. **This Court should rely on its holdings in Ex parte Tiede to determine that Taylor's recent revelation of childhood sexual abuse that had been suppressed for years is considered newly available relevant scientific evidence.**

In Ex parte Tiede, this Court held that a revelation of childhood sexual abuse that had been suppressed for years was considered newly available relevant scientific evidence.[27] This Court further held that the defendant had suppressed a child history of trauma that would have lessened his culpability, although he was an adult when the offense of murder had been committed.[28] The Court concluded that this newly available scientific evidence now explained Tiede's state of mind at the time of the offense, and granted him habeas relief in light of this new evidence.[29]

Like the claims in Ex parte Tiede, Taylor's mental-health history that has now come to light should be considered by the Court in determining a more appropriate sentence – especially under the rationale in Graham and Miller.[30] Taylor's affidavit, which details

---

26. See Ex parte Taylor, No. WR-41,683-01 (Tex.Crim.App. Oct. 15, 1999).
27. See Ex parte Tiede, No. WR-81,532-01 (Tex.Crim.App. Nov. 26, 2014).
28. Id., concurring opinion.
29. Id.
30. See Exhibit C, affidavit of Richard Owen Taylor; see also Graham, supra and Miller, supra.

sufficient specific facts of his childhood sexual abuse by his older brother, Charles Clark, who also orchestrated the aggravated robbery and influenced Taylor into participating, is uncontraverted by the State.[31]

Taylor does concede that he has not been examined by an expert. But a review of the details indicates that, if proven true by an expert psychologist, would provide mitigating evidence as to Taylor's mental state at the time he participated in the aggravated robbery, where Clark shot and killed the clerk after a struggle over the weapon ensued. Taylor should therefore be examined by an expert.

Moreover, Taylor's uncontraverted affidavit states that he recently had this revelation of childhood sexual abuse by Clark which he had suppressed for several years. This revelation came well after the final disposition of Taylor's initial application on October 15, 1999.[32]

This Court should therefore consider the merits in Ground Two.

B.   The U.S. Supreme Court has created a liberty interest in parole for juvenile offenders.

As previously discussed, the Supreme Court in Graham and Miller held that states may lock up defendants who commit heineous offenses as a juvenile, but they must give them some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation in order to avoid violating the 8th Amendment.[33]   These decisions

---

31.     See Exhibit C, affidavit of Richard Owen Taylor.
32.     See Ex parte Taylor, No. WR-41,683-01 (Tex.Crim.App. Oct. 15, 1999).
33.     See 130 S.Ct. 2011 and 132 S.Ct. 2455.

ultimately created a liberty interest in parole for juvenile offenders. The trial court has ignored these Supreme Court holdings and found that Taylor has no constitutional right in parole and therefore cannot raise the issue on habeas [Findings No. 16]. Taylor respectfully objects.

It is undisputed that Taylor was 17 years of age when this offense was committed. Taylor is now 41 years of age. He has been eligible for release on parole since August 18, 2007. The Parole Board has continued to deny Taylor parole, making him ineligible for parole until he has served 20 years in May, 2017; a total of 10 years of parole denials. These denials, however, are based on the nature of the offense, a factor Taylor is unable to change.[34]

The Parole Board refuses to consider Taylor's demonstrated maturity and rehabilitation. Taylor has demonstrated maturity and rehabilitation by completing all available TDCJ Courses, including Cognitive Intervention and Parenting. He has twice completed Voyager, a life changes class. He has mentored for the school system, and has successfully tutored several inmates to a GED certificate. He frequently attends AA/NA and many other support groups. He has no record of violent offenses in his now 18 years of incarceration. He has been without disciplinary, minor or major, for several years, while he has maintained the highest level of class earning status under his circumstances. He has asuitable residence and gainful

---

34.   See Exhibit D, affidavit of Richard Owen Taylor .

employment upon his release. This is the type of demonstrated maturity and rehabilitation the Supreme Court spoke about in <u>Graham</u> and <u>Miller</u>.[35]

The Parole Board is violating Taylor's rights under the 8th Amendment by refusing to grant him parole after he has demonstrated maturity and rehabilitation. The Parole Board's most recent denial occurred on May 27, 2015, which demonstrates it denied Taylor because of the nature of the offense. The Supreme Court did not require states to make parole available to juvenile offenders, while allowing the states to deny the same juvenile offender parole indefinitely.

The Court should therefore consider the merits in Ground Three.

### Conclusion

The four questions presented should be answered in a straight-forward fashion:

* No, Taylor could not have formulated the argument that trial counsel was ineffective during the 25 year plea negotiation and consideration because, at the time of the initial filing, the United States Supreme Court had not yet considered the plea bargaining stage as "critical" requiring the right to counsel. And, no, this issue has not been previously litigated because it was never presented to the court.

* Yes, the mitigating factors recognized in <u>Graham</u> and <u>Miller</u> were unavailable to Taylor and the courts when Taylor filed his initial application. Taylor could not have formulated his argument in Ground Two.

* Yes, Taylor's application contains sufficient specific facts establishing that the legal or factual basis for Ground Two was unavailable at the time he filed his initial application.

---

35.    See 130 S.Ct. 2011 and 132 S.Ct. 2455.

\* Yes, the United States Supreme Court holdings in <u>Graham</u> and <u>Miller</u> create a liberty interest in parole for juvenile offenders.

Taylor asks the Court to remand this case to the trial court for consideration of the merits. He further asks the Court to order the below court to appoint counsel and an expert so that the claims may be fully developed and a sufficient record presented to this Court for consideration.

Taylor asks the Court to direct the Texas Board of Pardons and Paroles to grant him release on parole.

Taylor prays for general relief.

Respectfully submitted,

Richard Owen Taylor
TDCJ# 816002, Telford
3899 State Hwy 98
New Boston, Tx 75570

Pro se Applicant

## Certificate of Service

I certify that a true copy of this objection was served on the District Attorney's Office by placing the same in the prison mailing system properly posted and addressed to Andrea Jacobs, Assistant District Attorney, 401 W. Belknap, Ft. Worth, Texas, 76196 on August 14, 2015.

Richard Owen Taylor