**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 16-1438**

---

RIAZ MAHMOOD,

                Petitioner,

    v.

JEFFERSON B. SESSIONS, III, Attorney General,

                Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued: January 24, 2017                 Decided: February 22, 2017

---

Before NIEMEYER, TRAXLER, and DIAZ, Circuit Judges.

---

Petition denied by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler and Judge Diaz joined.

---

**ARGUED**: Bradley Bruce Banias, BARNWELL, WHALEY, PATTERSON, AND HELMS, LLC, Charleston, South Carolina, for Petitioner. Tiffany L. Walters, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Anthony C. Payne, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

NIEMEYER, Circuit Judge:

Riaz Mahmood, a native and citizen of Pakistan who was granted asylum in the United States in 1997, voluntarily applied in 2011 for adjustment of his asylum status to the status of a lawful permanent resident, pursuant to 8 U.S.C. § 1159(b). His application was granted in 2012. The Attorney General thereafter sought to deport Mahmood for having, over the years, obtained several immigration benefits by fraud.

The immigration judge found by clear and convincing evidence that Mahmood deliberately misrepresented material facts in order to obtain travel documents and his lawful permanent resident status and ordered that Mahmood be removed from the United States to Pakistan.

The Board of Immigration Appeals ("BIA") affirmed, rejecting Mahmood's argument that he could not be removed unless his asylum status had first been terminated pursuant to 8 U.S.C. § 1158(c). Mahmood argued that, as an "adjusted asylee," he "retain[ed] the protections of asylum after obtaining [lawful permanent] residency, and therefore [could] not be removed without first having asylum terminated via the procedures outlined in [§ 1158(c)(2)] and 8 C.F.R. § 1208.24." In rejecting Mahmood's argument, the BIA relied on its precedential decision in *Matter of C-J-H-*, 26 I. & N. Dec. 284 (BIA 2014), which held that aliens who adjust to lawful permanent resident status under § 1159(b) do not retain their asylum status.

On appeal, we conclude that the BIA's interpretation of § 1159(b) is the best interpretation of the statute and that, in any event, it deserves deference under *Chevron*

2

*USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Accordingly, we affirm the BIA's decision and deny Mahmood's petition for review.

I

Some nine years after Mahmood was granted asylum in the United States, he applied in March 2006 for a refugee travel document in order to leave the country, stating that he sought to travel to Bangkok, Thailand, to visit his wife and children.  In his application, Mahmood indicated that, since being granted asylum in 1997, he had neither returned to Pakistan nor "applied for and/or obtained a national passport, passport renewal or entry permit" from Pakistan.  As it turned out, however, Mahmood had departed the United States in March 2003 using a Pakistani passport and reentered the United States in July 2005 using a U.S. visa.  The Department of Homeland Security ("DHS") was unaware of Mahmood's 2003 trip and granted Mahmood's application for the refugee travel document in July 2006.  Mahmood then departed the United States in February 2007 using a Pakistani passport with a number different from that which he had used in 2003 and returned in July 2007 using his U.S.-issued refugee travel document.

In December 2007, Mahmood applied for another refugee travel document, again purportedly to visit his wife and children in Bangkok, and, as in his first application, he denied having returned to Pakistan or having obtained or renewed a Pakistani passport since his grant of asylum.  While his application for this second refugee travel document was pending, Mahmood departed the United States using the same Pakistani passport that

3

he had used on his 2007 trip and returned a few months later, using the second refugee travel document that had since been granted.

Mahmood left the United States for a fourth time in March 2009, using a Pakistani passport with yet a third number. Mahmood claims that he traveled to Dubai, where he met his wife and children, and that they subsequently flew to Russia, Cuba, and finally Mexico, where he tried to bring his family across the border with the intent that they would apply for asylum in the United States "because their lives were in danger in Pakistan." He and his family were apprehended after crossing into the United States, and, in August 2009, the DHS charged Mahmood with removability on the ground that he had entered the country without inspection.

While that charge was pending, Mahmood filed a Form I-485 application in August 2011, seeking to adjust his asylee status to that of lawful permanent resident, pursuant to 8 U.S.C. § 1159(b). In his application, Mahmood certified under the penalty of perjury that he had never "by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States, or any immigration benefit." He further certified that he had never "knowingly encouraged, induced, assisted, abetted, or aided any alien to try to enter the United States illegally." While this application was pending, the DHS dropped the illegal entry charge against him and subsequently, in December 2012, granted his application for adjustment to the status of a lawful permanent resident.

In September 2013, however, the DHS commenced another removal proceeding against Mahmood, alleging that he had sought to procure an immigration benefit by fraud

4

or by willful misrepresentation of a material fact. Specifically, the DHS claimed that Mahmood's alleged misrepresentations regarding his unreported travel and possession of Pakistani passports made him inadmissible at the time of his application for adjustment, which in turn rendered him removable under the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A).

An immigration judge held a removal hearing and found that the DHS had proven, by clear and convincing evidence, that Mahmood had obtained his lawful permanent resident status and his two refugee travel documents by fraud. Specifically, the immigration judge found that Mahmood's travel pattern "represented a concerted effort by him to avoid using his authorized travel documents to return to Pakistan, which he denied was his intention when he applied for them," and that his use of three Pakistani passports showed that he made misrepresentations on his application for travel documents. The immigration judge also found that Mahmood was ineligible for a waiver of inadmissibility under 8 U.S.C. § 1159(c). As a result, the judge ordered that Mahmood be removed to Pakistan.

Mahmood appealed the immigration judge's decision to the BIA, at first on the sole ground that the immigration judge had erred in denying his application for waiver of inadmissibility. After Mahmood filed his initial brief, however, the Fifth Circuit issued a decision finding that the INA was ambiguous as to whether an asylee who adjusted his status to lawful permanent resident could be removed without first having his asylum status terminated under § 1158(c) and remanding the case to the BIA to resolve that question in the first instance. *See Ali v. Lynch*, 814 F.3d 306, 312 (5th Cir. 2016).

5

Relying on that decision, Mahmood filed a supplemental brief before the BIA, arguing that because he "retained his asylum status" after his adjustment to lawful permanent resident status, the immigration judge erred in ordering his removal without first conducting an asylum termination proceeding under 8 U.S.C. § 1158(c).

With a one-member decision, the BIA rejected Mahmood's arguments and dismissed his appeal. As relevant here, it held that the immigration judge properly ordered Mahmood's removal without first conducting an asylum termination proceeding. The BIA relied on its precedential decision in *Matter of C-J-H-*, 26 I. & N. Dec. 284, in which it had concluded that "aliens whose status was adjusted from asylee to lawful permanent resident no longer qualify as asylees," *id.* at 285, and it "declined to revisit [that] decision."

From the BIA's order dated March 29, 2016, Mahmood filed this petition for review.

II

Mahmood contends that even though he applied for and obtained the status of a lawful permanent resident, "he is still an asylee," and, as an asylee, he has "the right to not be returned to a country where [he] would be persecuted, threatened, or harmed." He argues that this treaty-based right is recognized and preserved in 8 U.S.C. § 1158(c), which provides that "in the case of an alien granted asylum . . . the Attorney General . . . *shall not remove or return* the alien to the alien's country of nationality" unless his asylum status is first terminated. *See also* 8 C.F.R. § 1208.22 (providing that "[a]n alien

6

who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to procedures set forth in 8 C.F.R. § 1208.24"). Mahmood's argument thus rests on his claimed continuing status as an asylee and the statutory requirement that the Attorney General cannot terminate the status of an asylee without pursuing the procedure set forth in § 1158(c) and in the regulations promulgated under it. Because the Attorney General has not pursued those procedures, he argues, he cannot now be deported, and the BIA erred as a matter of law in concluding otherwise.

The government does not dispute Mahmood's recital of law relating to asylees. Rather, it argues, because of Mahmood's voluntary action of changing his status from an alien granted asylum to a lawful permanent resident under § 1159(b), he is no longer an asylee with rights under § 1158. Focusing on the language of § 1159, under which Mahmood obtained an adjustment of status to a lawful permanent resident, the government maintains that "the term 'adjust' necessarily describes a change in status, not the acquisition of an additional status" and that therefore Mahmood "no longer retains asylee status." Under this argument, it reasons, Mahmood, as a lawful permanent resident, may be deported as any other lawful permanent resident under §§ 1227(a)(1)(A) and 1182(a)(6)(C) for procuring an immigration benefit by fraud or willful misrepresentation of a material fact.

It is undisputed that Mahmood, while an asylee, submitted an application in 2011 to the DHS to adjust his status to that of a lawful permanent resident under § 1159(b) and that the DHS granted his application in 2012. We therefore must focus on the consequence of this adjustment of status. To be sure, if Mahmood remains an asylee, his

7

status cannot be terminated by the Attorney General without following the process afforded by § 1158(c). On the other hand, if Mahmood is no longer an asylee by reason of his adjustment of status to a lawful permanent resident, he no longer enjoys the rights of asylum status. Thus, we must determine whether an asylee who successfully pursues an adjustment of status under § 1159(b) nonetheless retains the benefits of an alien granted asylum.

The text of § 1159(b) appears to answer this question. Section 1159(b) provides that "the Secretary of Homeland Security or the Attorney General . . . may," upon application of the alien and satisfaction of specified statutory conditions, "adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum." This text thus contemplates two statuses — an "alien granted asylum" and an "alien lawfully admitted for permanent residence." Moreover, it describes a process of "adjustment" from the former "to" the latter. A provision that addresses two statuses and provides for the adjustment from one "to" the other appears clearly to indicate a *change to* and *not an accretion of* the second status. *See Adams v. Holder*, 692 F.3d 91, 97 (2d Cir. 2012) ("[P]lainly, then *adjustment* of status . . . references some *change* in that status corresponding to a change in the alien's relationship to this country" (second emphasis added)).

Under this reading, therefore, Mahmood simply no longer holds the status of an "alien granted asylum." Rather, he holds the status to which he was adjusted, *i.e.*, an alien lawfully admitted for permanent residence. In his new status, he is, like every other lawful permanent resident, subject to removal for procuring an immigration benefit by

8

fraud or willful misrepresentation of a material fact. *See* 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C).

Mahmood contends, however, that focusing only on § 1159(b) paints an incomplete picture. He argues that because he was an asylee at the time he adjusted his status, we must focus on § 1158(c)(2)'s restrictions on the removal of asylees. As he points out, § 1158(c) allows the Attorney General to terminate asylum status for five listed reasons, none of which includes an adjustment of status under § 1159(b). Mahmood also points to DHS regulations providing that an asylee may not be removed absent termination of his asylum status under provided procedures. *See* 8 C.F.R. §§ 1208.22, 1208.24. And he argues that an adjustment of status under § 1159(b) cannot substitute for a formal termination of his asylum status pursuant to § 1158(c) and the regulations promulgated under that section.

Mahmood's argument, however, is premised on unwritten assumptions. First, it presumes that because the Attorney General cannot terminate an asylee's status except by following the specified procedures of § 1158(c) and its regulations, the alien cannot voluntarily give up the asylee status in favor of another. Second, he equates his *voluntary surrender* of his asylum status through his adjustment under § 1159(b) with the *involuntary loss* of his asylum status through the Attorney General's termination of it under § 1158(c). The two, however, are clearly not the same. The office of § 1158 protects an asylee from having his asylum status terminated against his will by the Attorney General except for the reasons given in § 1158. In contrast, the office of § 1159 authorizes an asylee to voluntarily give up his asylum status in favor of the status of a

9

lawful permanent resident. In this fashion, § 1158 does not appear to limit § 1159, as Mahmood seems to argue. On the contrary, § 1158 and § 1159 can easily be read harmoniously, with the former governing asylees while they retain that status and the latter serving as a bridge to an entirely different status with different rights and responsibilities. Thus, even though an asylee is protected from deportation and removal except as provided in § 1158(c), he can voluntarily seek adjustment of his status under § 1159(b) and thereby withdraw from the protections of asylum status to attain the benefits of being a lawful permanent resident.

Those benefits are different from asylee benefits and are significant. An asylee who adjusts his status under § 1159(b) gains a direct path to naturalized citizenship, 8 U.S.C. § 1427(a); he gives his family a better chance to obtain lawful permanent residency, *id.* § 1153(a)(2); and he obtains the right to travel outside of the United States without the advance permission of a refugee travel document, *id.* § 1101(a)(13)(C). An asylee who adjusts to lawful permanent resident status also untethers the fate of his immigration status from the tumultuous conditions of his home country, because his status as an asylee may, after all, be terminated if he no longer has "a well-founded fear of persecution." 8 U.S.C. § 1101(a)(42) (defining "refugee"); *see id.* § 1158(c)(2)(A) (allowing for termination if an alien granted asylum no longer meets INA's definition of "refugee"). Thus, Congress, with the enactment of § 1159, can be seen as deciding sensibly that, where an alien voluntarily seeks adjustment under § 1159(b) and gains the advantages of lawful permanent residency, he gives up the absolute right to have the protections of his asylum status adjudicated before removal.

10

In an effort to diminish the importance of the text of § 1159 and its apparent relationship to § 1158, Mahmood argues that Congress cannot have intended the practical consequences that flow from the BIA's interpretation. For one, he claims that allowing removal of a former asylee without termination will incentivize the government to "manipulate immigration benefits" by liberally granting adjustments to aliens it wishes to deport and then immediately initiating removal proceedings against them. But this argument entirely ignores the fact that the adjustment process is *voluntary* and that, moreover, § 1159(b) has its own limitations, such as those that require that the alien be admissible before granting the adjustment or obtain a waiver of inadmissibility. *See* 8 U.S.C. § 1159(b), (c). An alien simply need not apply for adjustment if he wishes to retain the protections of asylum. On the other hand, as we have explained, there are numerous benefits to be gained by forgoing the protections of asylum and seeking the status of a lawful permanent resident.

Moreover, an alien's status as a lawful permanent resident does not leave the alien fully exposed to removal to a dangerous country even if he conducts himself in a manner that gives rise to his removal. "Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). And, in some circumstances, the INA explicitly prohibits the Attorney General from removing an otherwise removable alien. *See* 8 U.S.C. § 1231(b)(3)(A) (prohibiting removal to a country where the Attorney General finds that "the alien's life or freedom would be threatened"); 8 C.F.R. § 1208.16(c) (prohibiting removal under the Convention

11

Against Torture if applicant shows that torture in country of removal is "more likely than not").

At bottom, the most reasonable reading of § 1159(b) leads to the conclusion that once an asylee has adjusted his status to that of lawful permanent resident, the alien is then fully considered a lawful permanent resident and not an asylee. And, in his status as a lawful permanent resident, the alien may be removed without a requirement that the Attorney General conduct an asylum termination proceeding under § 1158(c)(2).

Even so, Mahmood urges that we should remand this case to the BIA to resolve the ambiguity existing between § 1158 and § 1159 because neither section explicitly takes the other into account. He maintains that Congress may have intended to grant overarching protections to asylees until the asylee's status is terminated pursuant to § 1158(c), regardless of whether the asylee subsequently adjusts his status to lawful permanent resident. And because § 1158(c) does not list adjustment of status as a ground allowing for termination of asylum status, he argues that his reading of the statute would bar removal in his circumstances. *See Ali*, 814 F.3d at 311 (finding the INA ambiguous in this regard). Moreover, Mahmood notes, the BIA in this case construed only § 1159, never addressing the protections given to asylees by § 1158.

While we conclude that Mahmood's reading of the INA is not the best one, it is at least plausible, thus suggesting ambiguity. *See, e.g., Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 410, 417 (1993) (noting that a provision with two plausible meanings is ambiguous for purposes of applying *Chevron* deference).

12

Under the assumption that § 1159(b) is indeed ambiguous, it then becomes appropriate to defer to the BIA's interpretation of the INA in resolving the issue. As it is well understood, when the question of whether the BIA erred turns on statutory interpretation of the INA, "principles of *Chevron* deference" apply to our review of the decision because the BIA is responsible for administering the statute. *See Negusie v. Holder*, 555 U.S. 511, 516 (2009) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)).

Under *Chevron*, we must follow the plain meaning of the statute where "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. But if the statute is ambiguous, we must defer to the agency's permissible construction of that ambiguity made through its published, precedential decisions. *See Aguirre-Aguirre*, 526 U.S. at 424; *Hernandez v. Holder*, 783 F.3d 189, 192 (4th Cir. 2015).

In this case, the BIA relied on its precedential decision in *Matter of C-J-H-*, 26 I. & N. Dec. at 284, in holding that Mahmood could be removed without an asylum termination proceeding. Thus, even though the BIA's one-member decision in this case was not precedential and therefore not itself entitled to *Chevron* deference, it controls so long as *C-J-H-*, on which its decision rested, permissibly construed an ambiguity in the INA. *See Hernandez*, 783 F.3d at 192. In other words, the BIA's position in *C-J-H-* "prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best." *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2014 (2012).

13

In *C-J-H-*, as in the case before us, an alien who had been granted asylum subsequently adjusted his status to that of a lawful permanent resident pursuant to § 1159(b). 26 I. & N. Dec. at 284. The alien was then charged with removability after being convicted of conspiracy to traffic in counterfeit goods, a crime involving moral turpitude. *Id.* During his removal proceedings, the alien conceded removability but applied for a readjustment of status under § 1159(b), which, again, allows "any alien granted asylum" to adjust his status. *Id.* at 284-85. The BIA concluded, however, that the alien was not eligible for a readjustment of status. It reasoned that, by its "plain terms" § 1159(b) applied only "to *asylees* seeking to adjust status to that of a lawful permanent resident," and that "*[o]nce [the alien] became a lawful permanent resident, he no longer had the status of an asylee.*" *Id.* at 285 (emphasis added). The BIA based this conclusion in part on its prior holding that "a refugee admitted as a lawful permanent resident is subject to removability even though his refugee status has not been terminated." *Id.* (citing *Matter of Smirko*, 23 I. & N. Dec. 836, 841 (BIA 2005)).

Mahmood argues that *C-J-H-* does not warrant deference because the BIA there "failed to interpret section 1159(b) or section 1158(c)(2)" and because, in relying on its prior decisions outside the context of asylum, the BIA improperly "equated refugees and asylees." We do not find these arguments persuasive. For one, *C-J-H-*'s failure to analyze the effect of § 1158(c) does not imply that its analysis was insufficient. Rather, it implies that the BIA understood adjustment as a categorical shift from asylum to lawful permanent residency — a shift that left no continued role for the INA's provisions, such as § 1158, that apply to asylum status. *C-J-H-*, 26 I. & N. Dec. at 286 ("[A]liens who

14

have adjusted from their status as asylees have no status that would authorize them to readjust under [§ 1159(b)]"). The BIA's analysis perhaps would have been tighter had it made this point expressly, but we are not persuaded that a remand is necessary. With respect to the BIA's discussion of refugee cases in reaching its conclusion, we similarly reject that this fact somehow undercuts *C-J-H-*. The BIA in *C-J-H-* did not rest its holding on the similarities of those two categories but rather on the reasonable conclusion that the language of § 1159(b) provides that once an alien adjusts to lawful permanent resident status, he no longer holds the status of an asylee.

On a larger scale, Mahmood's challenge to the BIA's decision in *C-J-H- on the basis of its reasoning* ignores the limited nature of our review under *Chevron*. The Supreme Court has held that in reviewing an agency's interpretation of a statute, we will not remand solely because the agency engaged in a mode of reasoning other than that which we would have preferred. *See Aguirre-Aguirre*, 526 U.S. at 431 (rejecting the Ninth Circuit's conclusion that the BIA was required to address certain factors and, as a result, vacating the court's order of remand). Rather, because we are simply conducting a reasonableness review, we treat the BIA's interpretation as controlling unless it has reached *a conclusion* that is "arbitrary, capricious, or manifestly contrary to the statute." *Amos v. Lynch*, 790 F.3d 512, 518 (4th Cir. 2015) (quoting *Chevron*, 467 U.S. at 843-44). In this case, we cannot conclude that the BIA's conclusion regarding § 1159 was arbitrary, capricious, or manifestly contrary to the statute. To the contrary, as we have pointed out, the BIA in *C-J-H-* reached a reasonable conclusion in holding that, with adjustment, the alien relinquished his asylum status. Accepting the BIA's conclusion in

15

*C-J-H-* as reasonable, it then follows that Mahmood is not subject to the protections of § 1158(c), which by their terms apply only "[i]n the case of an alien granted asylum."

Of course, strong policies underlie the INA's protection of aliens granted asylum, as Mahmood points out, temporarily prohibiting, except in carefully delineated circumstances, their return to a country where they would be persecuted. But strong policies also underlie the INA's authorization to asylees to change their status and eventually to become naturalized citizens of the United States. These policies serve different purposes, either of which an alien in Mahmood's position may invoke. But the statute does not provide for both statuses to apply simultaneously. Asylum status is a *transient* status that is conditioned on the fear of persecution in the country of origin. Lawful *permanent* resident status, on the other hand, focuses on a future permanent status in the United States. Nonetheless, as we have noted, even in the circumstance where an asylee has adjusted his status to a lawful permanent resident and thereby relinquished his asylum status, the lawful permanent resident can, after obtaining that status, still object to deportation by requesting asylum if the conditions in his country at that time justify such a request.

As it stands, the BIA in this case held simply that because Mahmood adjusted his status from an alien granted asylum to a lawful permanent resident, he no longer has protections based on his *original* asylum status, and we affirm this holding. Accordingly, we deny Mahmood's petition for review.

PETITION DENIED