# Matter of N-A-I-, Respondent

*Decided August 3, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  An alien who adjusts status under section 209(b) of the Immigration and Nationality Act, 8 U.S.C. § 1159(b) (2012), changes his or her status from that of an alien granted asylum to that of an alien lawfully admitted for permanent residence, thereby terminating the alien's asylee status.  *Matter of C-J-H-*, 26 I&N Dec. 284 (BIA 2014), clarified.

(2) The restrictions on removal in section 208(c)(1)(A) of the Act, 8 U.S.C. § 1158(c)(1)(A) (2012), do not apply to an alien granted asylum whose status is adjusted to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Act.

FOR RESPONDENT:  Brian Vincent Schaeffer, Esquire, Houston, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY:  James E. Manning, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, MULLANE, LIEBOWITZ, Board Members.

MALPHRUS, Board Member:

In a decision dated December 5, 2014, we dismissed the respondent's appeal from the Immigration Judge's denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The United States Court of Appeals for the Fifth Circuit has remanded the record for us to further consider whether the respondent's asylee status was terminated when he adjusted his status to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Immigration and Nationality Act, 8 U.S.C. § 1159(b) (1994).  *Ali v. Lynch*, 814 F.3d 306 (5th Cir. 2016).  For the following reasons, the respondent's appeal will again be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Pakistan who entered the United States in 1991 and was granted asylum on December 3, 1992, in exclusion proceedings. He subsequently adjusted his status to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Act. On May 17, 2013, he was convicted in Texas of possession of a controlled substance.

The Department of Homeland Security ("DHS") initiated removal proceedings against the respondent, charging him with removability under section 237(a)(2)(B)(i) of the Act, 8 U.S.C. § 1227(a)(2)(B)(i) (2012), as an alien convicted of a crime relating to a controlled substance. In removal proceedings, the respondent filed new applications for asylum, withholding of removal, and protection under the Convention Against Torture, which the Immigration Judge denied in a decision dated September 10, 2013.

The respondent appealed from that decision, arguing, inter alia, that he cannot be removed because his asylee status was never terminated. On February 11, 2014, we remanded the record for further proceedings. Subsequently, we issued *Matter of C-J-H-*, 26 I&N Dec. 284 (BIA 2014), in which we held that an alien whose status has been adjusted from that of asylee to lawful permanent resident pursuant to section 209(b) of the Act no longer qualifies as an asylee and therefore cannot later readjust status under that section. In light of our holding in *Matter of C-J-H-*, the Immigration Judge concluded that the respondent was no longer an asylee and certified the record to us in a decision dated June 3, 2014. We affirmed the Immigration Judge's determination that the respondent is no longer an asylee and his denial of the respondent's new applications for relief, and we dismissed the appeal.[1]

On petition for review, the respondent argued that the plain language of section 208(c) of the Act, 8 U.S.C. § 1158(c) (2012), prohibits his removal without termination of his asylee status and that his adjustment to lawful permanent resident status did not terminate his asylee status. The court analyzed this argument under the framework in *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc*, 467 U.S. 837 (1984), finding that while section 208(c)(2) of the Act could be reasonably read as providing an exhaustive list of grounds for terminating asylee status, a reasonable interpretation of section 209(b) is that adjustment from the status of an asylee to that of an alien lawfully admitted for permanent residence entails a change in status, thereby terminating the alien's asylee status. Thus, the court

---

[1] Because the respondent did not challenge the Immigration Judge's denial of his application for protection under the Convention Against Torture, we deemed that issue waived. *See Matter of M-B-C-*, 27 I&N Dec. 31, 31 n.1 (BIA 2017).

concluded that Congress left open whether adjustment of status under section 209(b) of the Act terminates asylee status.

Although the Fifth Circuit recognized that our determination that the respondent is no longer an asylee was based on our previous holding in *Matter of C-J-H-*, it declined to accord our decision *Chevron* deference on the grounds that we did not fully consider the language and legislative history of the statute and other matters identified by the court. The court vacated our decision and remanded the record for us to issue a new decision. Upon further review, we continue to conclude that an alien's adjustment from the status of an alien granted asylum to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Act terminates the alien's asylee status.

## II. STATUTORY AND REGULATORY AUTHORITY

### A. Termination Under Section 208(c) of the Act

Section 208(c)(1)(A) of the Act prohibits the Attorney General from removing or returning "an alien granted asylum" under section 208(b) of the Act "to the alien's country of nationality or, in the case of a person having no nationality, the country of the alien's last habitual residence." *See also* 8 C.F.R. §§ 208.22, 1208.22 (2017) (providing that an "alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to" 8 C.F.R. § 208.24 or § 1208.24 (2017)). However, the same section also makes clear that a grant of asylum does not convey a right to remain permanently in the United States and may be terminated if the Attorney General determines that

> (A) the alien no longer meets the conditions described in subsection (b)(1) owing to a fundamental change in circumstances;
> (B) the alien meets a condition described in subsection (b)(2);
> (C) the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien is eligible to receive asylum or equivalent temporary protection;
> (D) the alien has voluntarily availed himself or herself of the protection of the alien's country of nationality or, in the case of an alien having no nationality, the alien's country of last habitual residence, by returning to such country with permanent resident status or the reasonable possibility of obtaining such status with the same rights and obligations pertaining to other permanent residents of that country; or

(E) the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

Section 208(c)(2) of the Act.  An alien described in section 208(c)(2) of the Act "is subject to any applicable grounds of inadmissibility or deportability," and his or her "removal or return shall be directed by the Attorney General in accordance with sections 240 and 241" of the Act, 8 U.S.C. §§ 1229a and 1231 (2012).  Section 208(c)(3) of the Act.

## B.  Adjustment of Status Under Section 209(b) of the Act

Under section 209(b) of the Act, the Secretary of Homeland Security or the Attorney General may, in the exercise of discretion, "adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum" who applies for adjustment and satisfies certain eligibility requirements.  Upon approval of an application, a record of the alien's admission for lawful permanent residence will be established "as of the date one year before the date of the approval of the application."  *Id.*

## III.  ANALYSIS

Based on the statutory language, as well as the relevant regulatory provisions, case law, and legislative history, we conclude that the best reading of sections 208(c) and 209(b) of the Act is that an "alien granted asylum" under section 208(b) who has his or her status adjusted to that of "an alien lawfully admitted for permanent residence" pursuant to section 209(b) does not retain the status of an alien granted asylum and therefore the restrictions on removal set forth in section 208(c)(1)(A) no longer apply.

While the phrase "adjustment of status" is not expressly defined by the Act, to "adjust" means "to bring to a more satisfactory state," or "to change the position of."  *Adams v. Holder*, 692 F.3d 91, 97 (2d Cir. 2012) (quoting *Webster's Third New International Dictionary* 27 (1986)).  An adjustment of status under the Act involves a change from one status to another status, not the acquisition of an additional status.  In other words, an alien whose status is changed does not retain his or her previous status.  In the context of section 209(b) of the Act, the adjustment entails a change from "the status of an[] alien granted asylum" to "the status of an alien lawfully admitted for permanent residence," which extinguishes the alien's asylee status.

The respondent claims that the conditions listed in section 208(c)(2) of the Act are the sole grounds for the termination of a grant of asylum.  However, the text of section 208(c)(2) does not state that it is an exhaustive list of possible reasons for termination.  Moreover, the regulations governing the termination of a grant of asylum do not support the respondent's

interpretation because they provide that a grant of asylum may also be terminated where there is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted. 8 C.F.R. §§ 208.24(a)(1), 1208.24(a)(1).[2]

The view that the list in section 208(c)(2) of the Act does not provide continuing protection for aliens who adjust to lawful permanent resident status is supported by the language of the provision. Section 208(c)(2) expressly states that "[a]sylum granted under subsection (b) does not convey a right to remain permanently in the United States." In addition, section 208(c)(3) confirms that an alien whose asylee status is terminated pursuant to section 208(c)(2) is subject to any applicable grounds of inadmissibility or deportability. In other words, being granted asylum is not the same as having lawful permanent resident status, and removal proceedings may ensue if an alien's asylee status is terminated. It does not follow that an alien who voluntarily surrenders asylee status through adjustment of status under section 209(b) of the Act can only be removed after first undergoing the termination process set forth in section 208(c)(2) and its implementing regulations. Because an alien whose status is adjusted to that of a lawful permanent resident under section 209(b) no longer has the status of "an alien granted asylum," he or she is no longer protected by the bars to removal set forth in section 208(c)(1)(A) of the Act and 8 C.F.R. §§ 208.22 and 1208.22.

The Fourth Circuit recently reached the same conclusion in *Mahmood v. Sessions*, 849 F.3d 187 (4th Cir. 2017). In that case, an alien granted asylum had his status adjusted to that of an alien lawfully admitted for permanent residence under section 209(b) of the Act. The Fourth Circuit upheld our determination that his asylee status ended when it was adjusted to that of a lawful permanent resident.

As the Fourth Circuit stated, the language of section 209(b) identifies two immigration statuses and describes a process for an alien to "adjust to" the status of an alien lawfully admitted for permanent residence from the status of an alien granted asylum. *Id.* at 191. We agree that this language indicates "a *change to* and *not an accretion of* the second status." *Id.* (citing *Adams*, 692 F.3d at 97 ("Plainly, then *adjustment* of status . . . references some change in that status corresponding to a change in the alien's relationship to

---

[2]   The regulations provide that the termination provisions described in section 208(c)(2) of the Act are only applicable if the underlying application was filed on or after April 1, 1997. 8 C.F.R. §§ 208.24(a)(2), 1208.24(a)(2). An application filed prior to that date may be terminated where "the alien no longer has a well-founded fear of persecution upon return due to a change of country conditions in the alien's country of nationality or habitual residence or the alien has committed any act that would have been grounds for denial of asylum" under 8 C.F.R. § 208.13(c)(2) or § 1208.13(c)(2) (2017). 8 C.F.R. §§ 208.24(a)(3), 1208.24(a)(3).

this country.")).  The court found the voluntary surrender of asylee status through adjustment of status under section 209(b) of the Act to be distinguishable from the involuntary loss of asylee status under section 208(c) and its implementing regulations.  It determined that both provisions could be read harmoniously, with section 208(c) "governing asylees while they retain that status" and section 209(b) "serving as a bridge to an entirely different status with different rights and responsibilities."  *Id.* at 192.

Consequently, the Fourth Circuit concluded that the most reasonable reading of section 209(b) of the Act is that once an asylee has adjusted his or her status to that of an alien lawfully admitted for permanent residence, the alien is "fully considered a lawful permanent resident and not an asylee" and can therefore "be removed without a requirement that the Attorney General conduct an asylum termination proceeding under [section 208(c)(2)]."  *Id.* at 193.  As the court explained, "Congress, with the enactment of [section 209 of the Act], can be seen as deciding sensibly that, where an alien voluntarily seeks adjustment under [section 209(b)] and gains the advantages of lawful permanent residency, he gives up the absolute right to have the protections of his asylum status adjudicated before removal."  *Id.* at 192.  The court further held that, even assuming the statute is ambiguous, our holding in *Matter of C-J-H-* was reasonable and entitled to *Chevron* deference.  *Id.* at 193−95.

It is significant that an alien's asylee status can only be terminated under section 209(b) of the Act if he or she voluntarily chooses to seek adjustment of status under that section.  There are many reasons why an alien might choose to give up the protections of asylee status for lawful permanent resident status, but he or she is not required to do so and may remain indefinitely as an asylee.  As the Fourth Circuit noted, an asylee who adjusts status under section 209(b) obtains significant benefits, including "a direct path to naturalized citizenship," a better chance for his or her family to obtain lawful permanent residence, and "the right to travel outside of the United States without the advance permission of a refugee travel document."  *Id.* at 192.  An asylee who adjusts to lawful permanent resident status also cannot have that status terminated on the grounds that he no longer has a well-founded fear of persecution.  *Id.*  However, an alien who prefers to retain the benefits and protections of asylee status, including the restrictions against removal under section 208(c) of the Act, is not obligated to file an application for adjustment of status.

It is also significant that an alien who is placed in removal proceedings after adjusting status under section 209(b) of Act is not without a mechanism for seeking asylum or other protection from harm in his or her country of nationality.  Under these circumstances, the alien can file a new asylum application with the Immigration Judge.  Although an asylum applicant

generally must file within 1 year after the date of arrival in the United States, the application will not be denied as untimely if the applicant demonstrates the existence of extraordinary circumstances relating to the delay in filing, which include maintaining lawful immigrant or nonimmigrant status until a reasonable period before the filing of the application. Sections 208(a)(2)(B), (D) of the Act; 8 C.F.R. §§ 208.4(a)(5)(iv), 1208.4(a)(5)(iv) (2017). Also, the 1-year bar is not applicable to applications for withholding of removal or protection under the Convention Against Torture, so these applications may be available even if asylum is not. *See, e.g.*, *Arif v. Mukasey*, 509 F.3d 677, 680 (5th Cir. 2007).

We held in *Matter of C-J-H-*, 26 I&N Dec. at 285, that an alien whose status is adjusted from that of asylee to that of lawful permanent resident no longer qualifies as an asylee. That case presented the related but separate question whether an alien granted asylum who has his or her status adjusted to that of an alien lawfully admitted for permanent residence under section 209(b) of the Act can later readjust under that section. We now clarify that adjustment of status under section 209(b), by its nature, changes the status of an alien granted asylum to that of an alien lawfully admitted for permanent residence, thereby terminating the alien's asylee status. We note that we do not reach this conclusion based on the similarities between asylees and refugees, but rather based on the language of sections 208(c) and 209(b) of the Act, the language and structure of the Act as a whole, and the nature and consequences of the process of adjustment of status.

We see no conflict between our conclusion that an alien granted asylum who has his or her status adjusted to that of an alien lawfully admitted for permanent residence under section 209(b) of the Act does not retain the status of an alien granted asylum and our statement in *Matter of V-X-*, 26 I&N Dec. 147, 149 (BIA 2013), that the statutory grounds for termination of asylum are narrower than the grounds for removability. In that case, an alien granted asylum was subsequently placed in removal proceedings and ordered removed from the United States by an Immigration Judge as a result of multiple criminal convictions. At the time he was ordered removed, the alien's status had not been adjusted pursuant to section 209(b) of the Act or terminated under section 208(c) and its implementing regulations. Because the Immigration Judge's decision included no analysis of the termination issue and did not order the alien's asylee status terminated, we remanded the record for the Immigration Judge to enter a new decision with respect to the termination of the alien's asylee status.

Our statement that the statutory grounds for termination are narrower than the grounds for removability was intended to clarify that a finding of removability does not trigger the automatic termination of asylee status and that the issue of termination needed to be addressed by the Immigration

Judge. Unlike the alien in *Matter of V-X-*, whose removal was precluded while he retained asylee status, an asylee who chooses to adjust his status to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Act is subject to all applicable grounds of removability.

We also see no conflict between our holding and 8 C.F.R. §§ 208.14(g) and 1208.14(g) (2017), which provide that if an asylum applicant is granted lawful permanent resident status, the asylum application is presumed abandoned and dismissed without prejudice unless the applicant submits a written request that it be adjudicated. These regulations apply solely to an alien applying for asylum, not an alien who has been granted asylum and subsequently has his asylee status adjusted to that of a lawful permanent resident. The presumption of abandonment supports the view that an alien's adjustment of status to that of a lawful permanent resident under section 209(b) extinguishes a claim to asylee status.

We are unaware of anything in the legislative history of the Act that indicates Congress intended for an alien who voluntarily adjusted his status under section 209(b) of the Act to retain the protections provided to asylees under section 208(c)(1)(A). The provisions governing termination of asylee status and adjustment of status for aliens granted asylum were added to the statute by the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 ("Refugee Act"). Initially, a grant of asylum could be terminated where the Attorney General determined that the alien was "no longer a refugee within the meaning of section 101(a)(42)(A) [of the Act] owing to a change in circumstances in the alien's country of nationality or, in the case of an alien having no nationality, in the country in which the alien last habitually resided." Refugee Act § 201(b), 94 Stat. at 105 (codified at section 208(b) of the Act, 8 U.S.C. § 1158(b) (1982)). Congress later replaced that provision with the expanded list of termination grounds currently set forth in section 208(c)(2) of the Act. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 604(a), 110 Stat. 3009-546, 3009-692 to -693.

It has long been recognized that one of Congress' primary purposes in passing the Refugee Act was to implement the principles agreed to in the United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968) ("Protocol"), and the United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"). *See, e.g.*, *Matter of J.M. Alvarado*, 27 I&N Dec. 27, 30 n.3 (BIA 2017). Article 1(C) of the Convention lists six grounds for the cessation of refugee status, which together with the three exclusion

categories described in Article 1(F), generally correspond to the grounds for termination set forth in section 208(c)(2) of the Act.

Guidance regarding the "cessation clauses" is provided in Chapter III of the Office of the United Nations High Commissioner for Refugees, *Handbook and Guidelines on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* 23−27 (reissued 2016) ("*Handbook*").[3] Paragraph 116 of the *Handbook* indicates that the six cessation grounds in Article 1(C) of the Convention are "exhaustively enumerated" and that "no other reasons may be adduced . . . to justify the withdrawal of refugee status." *Id.* at 24. However, paragraph 117 of the *Handbook* clarifies that Article 1(C) does not deal with the cancellation of refugee status, which is distinguishable from cessation and normally occurs where it comes to light that an individual should never have been recognized as a refugee in the first place, such as where he or she falls within one of the exclusion categories described in Article 1(F). *Id.*; *see also id.* at 29−32 (discussing the exclusion clauses in Article 1(F) of the Convention). Thus, even if Article 1(C) provides an exhaustive list of the grounds for the cessation of refugee status, cessation is not the sole means by which refugee status may be ended.

Moreover, paragraph 116 of the *Handbook* separately acknowledges that "if a refugee, for whatever reasons, no longer wishes to be considered a refugee, there will be no call for continuing to grant him refugee status and international protection." *Id.* at 24. In other words, the Convention provides both for the involuntary loss of refugee status, through either cessation or cancellation, as well as the voluntary surrender of that status. Thus, we see no conflict between Congress' intent to implement the principles agreed to in the 1967 Protocol and the 1951 Convention and our conclusion that section 209(b) of the Act allows an alien who voluntarily surrenders his or her asylee status to become a lawful permanent resident.[4]

---

[3] Construction of the provisions of the Protocol, and by extension those of the Convention, falls within the authority of each State that is a party to the Protocol. *See Matter of Acosta*, 19 I&N Dec. 211, 220 (BIA 1985), *modified on other grounds*, *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). While the *Handbook* is a useful tool in construing our obligations under the Protocol, it is neither binding on the United States nor controlling as to our construction of the Act. *Id.*

[4] We recognize that the Office of the United Nations High Commissioner for Refugees ("UNHCR") has issued an opinion letter taking the position that an individual's refugee status does not cease if he or she becomes a lawful permanent resident and that acquisition of lawful permanent residence is not a basis for cancellation of refugee status. *See* Letter from R. Andrew Painter, Senior Protection Officer, to Robert Pauw, Esq. (Feb. 28, 2003), *reprinted in* 80 Interpreter Releases, No. 11, Mar. 17, 2003, at 413 & app. III at 423−29. The UNHCR's opinion is not binding on us or controlling as to our construction of the Act.

## IV.  CONCLUSION

For the foregoing reasons, we conclude that an alien who was granted asylum but subsequently adjusted his or her status to that of an alien lawfully admitted for permanent residence under section 209(b) of the Act does not retain asylee status and is therefore no longer protected by the restrictions on removal set forth in section 208(c)(1)(A) of the Act or its implementing regulations.

The respondent's asylee status was terminated when he adjusted his status to that of an alien lawfully admitted for permanent residence pursuant to section 209(b) of the Act.  Consequently, his removal is not precluded by the Act or the regulations.  We therefore affirm the Immigration Judge's determination that he is removable from the United States.  For the reasons set forth in our December 5, 2014, decision, we also affirm the Immigration Judge's denial of the respondent's current applications for asylum and withholding of removal.  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

---

*See Matter of Q-T-M-T-*, 21 I&N Dec. 639, 651 (BIA 1996) (considering but declining to adopt the position set forth in a UNHCR opinion letter).  Moreover, an opinion letter carries less weight than other, more formal sources of guidance, particularly the *Handbook*.  While the letter takes the view that the "acquisition" of lawful permanent resident status does not trigger the involuntary loss of refugee status through cessation or cancellation, it does not address the exact issue here, which concerns what happens when an individual voluntarily surrenders his or her asylee status through the process of adjustment of status.  In any event, to the extent that the UNHCR's opinion letter supports the respondent's position, it does not persuade us to adopt his interpretation of the adjustment of status provisions in the Act.